UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE, et al.,

                                   CASE NO. 06-CV-10961-DT
         Plaintiffs,         JUDGE PAUL V. GADOLA
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

v.

PATRICIA CARUSO,
BLAINE LAFLER,
BARBARA MEAGHER, et al.,

         Defendants,
                                   /

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF ROUSE'S MOTION AND MEMORANDUM OF LAW FOR PARTIAL SUMMARY JUDGMENT
### (Doc. Ent. 99)

**I.**     **RECOMMENDATION:** The Court should deny without prejudice plaintiff's motion for partial summary judgment. Doc. Ent. 99.

**II.**     **REPORT:**

**A.**     **The Complaint**

The complaint in this case was filed on March 3, 2006 on behalf of nineteen (19) named defendants. Doc. Ent. 1 at 4 ¶¶ 10-28. The named defendants are Patricia Caruso, Blaine Lafler and Barbara Meagher. Doc. Ent. 1 at 5 ¶¶ 34-36. Plaintiffs' complaint sets forth five (5) claims for relief:

    I.    **Eighth Amendment Cruel and Unusual Punishment** based upon denial of medical care and medication, dangerous noise levels, denial of bathroom use, serious disease outbreaks, and medline prisoners are forced in the cold. Doc. Ent. 1 at ¶¶ 87-146.

    II.    **Eighth Amendment Inhumane Treatment** based upon cold cubicles and poor ventilation, cramped living space, denial of hygiene, and contaminated drinking water. Doc. Ent. 1 at ¶¶ 147-166.

III. **Eighth Amendment Unsafe Living Conditions** based upon no fire suppression system, overcrowded prison, and unrestricted access to prisoner's files/internet. Doc. Ent. 1 at ¶¶ 167-173.
IV. **First, Fifth and Fourteenth Amendment Denial of Access to Courts** based upon inadequate law library time, limited law materials, and seizure (without due process and/or equal protection) of property and of legal materials. Doc. Ent. 1 at ¶¶ 174-181.
V. **Fourteenth Amendment Unlawful Removing of Funds** based upon money removal without a hearing and excessive and unauthorized money removal. Doc. Ent. 1 at ¶¶ 182-189.

Doc. Ent. 1 at 2-3, 13-26. Plaintiffs seek injunctive relief, class action status, and monetary damages. Doc. Ent. 1 at 27 ¶¶ A-D. The complaint is signed under penalty of perjury. Doc. Ent. 1 at 28-30. Along with this complaint, plaintiffs filed exhibits A-G. Doc. Ent. 2.

On March 14, 2007, defendants Caruso, Lafler and Meagher filed an answer to the complaint. Doc. Ent. 81. Defendants also filed a demand for trial by jury and affirmative defenses. Doc. Entries 82 and 83.

Shortly thereafter, plaintiffs Warner and Rider were dismissed without prejudice on March 23, 2007. Doc. Ent. 84 at 2. Gates, Ashley and Curtis were terminated as plaintiffs on April 29, 2008. Doc. Ent. 162. However, on August 21, 2008, I entered an order reinstating Ashley and Gates as plaintiffs. Doc. Ent. 179. Therefore, there are now sixteen (16) active plaintiffs in this case. Plaintiff Rouse is proceeding pro se, and the remaining plaintiffs are represented by counsel.

B. **Plaintiff Rouse's Pending Motion for Partial Summary Judgment**

On April 6, 2007, plaintiff Rouse filed a motion and memorandum of law for partial summary judgment "for the claims that are undisputed by the evidence and admissions put forth on the record." Doc. Ent. 99 ¶ 22. Plaintiff's motion discusses water contamination (¶¶ 23-30);

2

denial of medical staff (¶¶ 31-36); unconstitutional policies (¶¶ 37-45); bathroom denial (¶¶ 46-50); no automatic fire suppression equipment (¶¶ 51-54); overcrowding (¶¶ 55-60).

On April 27, 2007, defendants Caruso, Lafler and Meagher filed a response. Doc. Ent. 105. Plaintiff filed a reply on May 17, 2007 which discusses no medical staff (¶¶ 5-10); water contamination (¶¶ 11-18); denial of hygiene (¶¶ 19-27); medical policies (¶¶ 28-34); denial of bathroom use (¶¶ 35-42); no automatic fire suppression equipment (¶¶ 43-45); and overcrowding (¶¶ 46-51). Doc. Ent. 121 at 1-7. Attached to plaintiff's reply are five attachments: (1) "Let no others die from inept prison health care", Detroit Free Press February 27, 2007; (2) "Lawmaker, federal judge disagree on prison health care"; (3) ACLU Position Paper, "Prisoners' Rights", Fall 1999; (4) May 1, 2007 letter from attorney Daniel E. Manville; and (5) September 26, 2006 letter from attorney Paul D. Reingold to plaintiff. Doc. Ent. 121 at 8-12.[1]

**C.     A Previously Filed Appeal has Been Dismissed.**

On May 2, 2007, a notice of appeal from certain March 23, 2007 and April 17, 2007 orders (Doc. Entries 86, 87 and 101) was filed. Doc. Ent. 112. On May 22, 2007, Judge Gadola entered an order staying the case without prejudice to any party, until such time as pro bono counsel was secured or until the Court determines that pro bono counsel cannot be secured by the Court. The order also enjoined the parties from filing further motions until the stay was lifted. Doc. Ent. 123.

---

[1]The first seven pages of plaintiff's reply were also filed as Doc. Ent. 119, bearing the Clerk's Office notation that the document was not signed with an original signature. Doc. Ent. 119 at 1.

Thereafter, the Sixth Circuit entered several orders. On September 24, 2007, the Sixth Circuit entered an order denying the application for leave to appeal the May 22, 2007 order. Doc. Ent. 135 (Case No. 07-0107).

On November 14, 2007, the Sixth Circuit entered an order regarding the May 2, 2007 notice of appeal. It treated plaintiff's May 2, 2007 filing as (1) a notice of appeal from the Court's March 23, 2007 order denying without prejudice the motion for a preliminary injunction (Doc. Ent. 87); (2) a Rule 23(f) application to appeal this Court's March 23, 2007 order denying without prejudice the motion for class certification (Doc. Ent. 86) and (3) a document seeking mandamus relief.[2] *Rouse v. Caruso*, No. 07-1829 (6th Cir. Nov. 14, 2007). Ultimately, the Sixth Circuit stated that the appeal would proceed as to the order denying a preliminary injunction (Doc. Ent. 87) and the April 17, 2007 order denying reconsideration of that order (Doc. Ent. 101). However, the Sixth Circuit denied the application to appeal this Court's March 23, 2007 denial of class certification (Doc. Ent. 86) and denied the request for mandamus relief. Doc. Ent. 137 (Case No. 07-1829).[3] On August 12, 2008, the Sixth Circuit entered an order dismissing the appeal for want of prosecution. Doc. Ent. 178 (Case No. 07-1829).

On February 7, 2008, the Sixth Circuit entered an order denying the petition for a writ of mandamus with respect to the May 22, 2007 order. Doc. Ent. 153 (Case No. 07-1994).

**D.     Other Plaintiffs Have Filed a Motion for Leave to File a First Amended Complaint.**

---

[2] The request for mandamus relief was contained in Rouse's brief in support of his application for leave to appeal. *Rouse v. Caruso*, No. 07-1829 (6th Cir. Nov. 14, 2007).

[3] It appears that plaintiff Rouse was released on parole on or about February 27, 2008. Doc. Ent. 155.

On April 15, 2008, several plaintiffs filed a motion for leave to file an amended complaint. Doc. Ent. 161.[4] Defendants filed a response on May 16, 2008. Doc. Ent. 169. I will issue an order regarding the April 15, 2008 motion to amend under separate cover.

**E.    Fed. R. Civ. P. 56**

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

---

[4]The proposed first amended complaint's factual history discusses denial of medical care and medication, overcrowding, cruel and unusual punishment, and contaminated drinking water. Doc. Ent. 161-3 ¶¶ 12-26. Count I describes Eighth Amendment violations based upon denial of medical care and medication, dangerous noise levels, denial of bathroom use, serious disease outbreaks, medline prisoners are forced into the cold, cold cubicles and poor ventilation, crammed living space, denial of hygiene, contaminated drinking water, no fire suppression system, overcrowded prison, and prisoner's personal files. Doc. Ent. 161-3 ¶¶ 27-58. Count II describes First, Fifth and Fourteenth Amendment violations of access to courts based upon inadequate law library time, limited law books, and seizure of property and of legal materials. Doc. Ent. 161-3 ¶¶ 59-66. Count III describes Fourteenth Amendment violations of unlawful removal of funds based upon property/money removal without a hearing. Doc. Ent. 161-3 ¶¶ 67-73.

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a

directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

**F.      The Court Should Deny Without Prejudice Plaintiff Rouse's Motion for Partial Summary Judgment.**

**1.**     First, the Court should conclude that there are genuine issues of material fact in each of the six areas (water contamination, denial of medical staff, unconstitutional policies [MDOC PD 04.02.120 ("Indigent Prisoners") and MDOC PD 03.04.100 ("Health Services")], bathroom denial, no automatic fire suppression equipment, and overcrowding) regarding which plaintiff seeks summary judgment.

Defendants argue that "[a]ll of the issues raised by Plaintiff have been denied or otherwise explained by Defendants in their Answer." Doc. Ent. 105 at 3. As an initial matter, defendants point out, "[t]he fact alone that Defendants admitted some of plaintiff's allegations does not mean that Plaintiffs are entitled to summary judgment on those issues." Doc. Ent. 105 at 2. For example, within the "medical care background" portion of his complaint and the "denial of medical care and medication" sections of plaintiffs' complaint, plaintiffs allege:

> There is no Medical staff at MMC after 8 pm. and on the weekends. [T]he only medical care given at those times (after hours & weekends) are outside Hospitals, if you can prove that it is a life threatening emergency.
> . . .
> The STF Medical Orientation Sheet explains that the[re] is no Medical Staff at MMC after 11 pm weekdays and 8 pm weekends (cf.Exh.A-3). Due to their budget crises their time has been reduced even more.
> . . .
> It also alleges that there is 16.5 hours of Nursing coverage each day at MMC. This is not correct (Id). We have about 12 hours on the weekdays only, no weekends.

Doc. Ent. 1 ¶¶ 78, 123, 126. In their answer, defendants state:

> Defendants admit the allegations within this paragraph. Due to staff vacancies, the Health Care Clinic is on a reduced schedule until which time viable candidates are hired.
> . . .
> Defendants deny the allegations contained in this paragraph. The Clinic hours are currently 0700-2000 hours M-F and 0700-1930 hours on weekends and holidays. The reduced hours in the Health Care Clinic is due [to] an inability to fill the staff vacancies as there are no viable candidates.
> . . .
> Defendants admit that the pamphlet states that there are 16.5 hours of nursing coverage each day at STF. However, due to limited staff the clinic currently operates from 0700-2000 hours M-F and 0700-1930 hours on weekends and holidays.

Doc. Ent. 81 at ¶¶ 78, 123, 126. Relying upon these paragraphs of defendants' answer, plaintiff contends that defendants "admitted that the Mid-Michigan prison is without medical staff for

8

approximately eight (8) hours everyday." Doc. Ent. 99 at 2 ¶ 7. Defendants assert that "just because Mid-Michigan does not have medical staff present at the facility for eight hours per day does not establish that Plaintiff has not received adequate or appropriate medical care." Doc. Ent. 105 at 2. Defendants further contend that "simply because medical staff may not be on hand constantly at Mid Michigan Correctional Facility does not mean that Plaintiffs are denied medical treatment." Defendants contend that they "cannot properly respond to Plaintiffs claims as Plaintiffs have not provided or cited to any examples in their motion where allegedly deficient medical staffing levels ha[ve] caused harm to Plaintiff. Plaintiff has simply failed to demonstrate any examples of Plaintiffs not receiving medical care." Doc. Ent. 105 at 3.

Also, relying upon plaintiffs' affidavits (Doc. Ent. 2 Exhibits G-1 - G-17) and the affidavits of proposed plaintiffs Kaczmarek and Morey (Doc. Ent. 40 at 10, Exhibits S-1 & S-2), plaintiff Rouse asserts that "the Plaintiffs have demonstrated many skin and health problems which [are] directly pointing to the water contamination." Doc. Ent. 99 at 4 ¶ 28. In response, defendants assert that "[p]laintiff Rouse has not demonstrated that he has suffered adverse health effects due to the contaminated water, contrary to what he asserts in his motion for summary judgment." In support of this position, defendants explain that plaintiff is not a doctor and "has not attached any medical documentation to his original complaint or his motion for summary judgment to support any of these claims." Doc. Ent. 105 at 2. Furthermore, citing the 2005 Water Quality Report for St. Louis, Doc. Ent. 81-3, defendants assert that "[b]ased on the latest water quality report on the St. Louis, Michigan water system, the water in St. Louis, Michigan complies with federal limits." Doc. Ent. 105 at 2-3.

9

Furthermore, plaintiff alleges with respect to his denial of hygiene claim that "[t]he MDOC has no provision to provide hygiene if a Prisoner[']s hygiene is stolen or lost. The normal routine takes about six weeks for those who are indigent. On or about 10/8/05 David Crest was denied indigent status because he could not take a job for medical reasons (cf.Exh.C-8). This violated the US. Constitution." Compl. ¶ 161. Defendants answer, "Defendants deny the allegations contained within this paragraph. If a prisoner is without soap, there are liquid soap dispensers located within the restrooms, and bar soap can be provided pending the indigent approval process." Doc. Ent. 81 ¶ 161. In the instant motion, plaintiff Rouse asserts that "[MDOC PD 04.02.120] clearly states that [the MDOC] will not provid[e] hygiene for indigent prisoners who were terminated from work or school." Doc. Ent. 99 ¶ 37. Defendants respond that "[l]iquid soap is provided in the prisoners' bathrooms and bar soap is also available to indigent prisoners." Doc Ent. 105 at 3.

Additionally, citing MDOC PD 03.04.100, plaintiff claims that diagnoses are permitted via telephone. Doc. Ent. 99 ¶¶ 41, 43. Defendants assert they "have denied Plaintiffs' assertion that health care staff diagnoses prisoners over the phone." Doc. Ent. 105 at 3.

Moreover, plaintiff alleges with respect to his denial of bathroom use claim:

Plaintiffs and Proposed Class Members are denied bathroom use at MMC during count time, which takes place six times a day, for 30 minutes or more each time. This includes first thing in the morning after sleeping for six to eight hours. This has caused pain, suffering, and bla[dd]er problems (cf.Exh.A-5-a, 5-b, & 5-c).
. . .
Prisoners are also denied bathroom use during Fire Drills and on Top Lock, for up to four hours without any Legitimate Penalogical reason. Prisoners are issued a Major Misconduct if they violate this rule (cf.Exh.G-1, G-9, & G-12). The two other options a Prisoner has [are] to urinate or def[e]cate on himself or get a Major Ticket.

10

Doc. Ent. 1 ¶ 135, 136. To each paragraph, defendants answer, "Defendants deny the allegations contained within this paragraph and leave Plaintiffs to their proofs." Doc. Ent. 81 ¶¶ 135, 136. Defendants note that "[w]ith regard to bathroom use, Defendants deny Plaintiff's allegations that he was denied bathroom use." Doc. Ent. 105 at 3.

Plaintiff has filed a reply to the defendants' response to his motion. Doc. Ent. 121. Plaintiff is correct in his allegation that defendants' response to his motion does not address his fire suppression equipment argument or his overcrowding argument. Doc. Ent. 99 ¶¶ 51-54, 55-60; Doc. Ent. 121 ¶¶ 43, 46. Plaintiff specifically claims that "Defendants failed to address [his] claim that Mid-Michigan is totally void of automatic fire suppression equipment which is required by state law and ACA standards." Doc. Ent. 121 ¶ 43. Plaintiff mentions that part of the problem "is due to [the MDOC's] parole policy of not releasing prisoners." Doc. Ent. 121 ¶ 49. However, the complaint paragraphs related to the no fire suppression system claim, Doc. Ent. 1 ¶¶ 167-169, were each answered by defendants as follows: "Defendants deny that STF is non-compliant with state and federal law with regard to fire safety." Doc. Ent. 81 ¶¶ 167-169. Furthermore, the complaint paragraph related to the overcrowded prison claim, Doc. Ent. 1 ¶ 170, was answered by defendants as follows: "Defendants deny the allegations contained within this paragraph. There are capacity limit signs posted and the facility remains in compliance with the posted limits." Doc. Ent. 81 ¶ 170. Therefore, the Court should not "grant a Partial Summary Judgment and declare Mid-Michigan unsafe in violation of state law and ACA standards which is part of the MDOC's accreditation[;]" nor should the Court "grant a protective Order to remove the seventh (7th) bunk in each of the cubicles." Doc. Ent. 121 ¶¶ 45, 46.

Furthermore, plaintiff Rouse's reply does not change my conclusion that material questions of fact exist on the remaining claims with respect to which plaintiff seeks summary judgment. While it may be true that "[c]ustody staff are not medically qualified or trained to diagnose prisoners in the absence of medical staff[,]" at this time plaintiff is not entitled to partial summary judgment on his no medical staff claim on the basis "of the future harm the lack of medical staffing . . . will bring at these correctional facilities." Doc. Ent. 121 ¶¶ 9, 10.

Also, whether plaintiff "has suffered the effects of the contaminated water along with many other prisoners which includes, but [is] not limited to, skin rashes, boils, staph infections, etc.," is an issue that can be explored during discovery; therefore, at this time "a Partial Summary Judgment is [not] warranted for the water contamination claim and protective Orders should [not] be approved to provide bottled water to the prisoners." Doc. Ent. 121 ¶¶ 12, 18.[5]

Furthermore, with respect to his denial of hygiene claim, plaintiff claims that MDOC PD 04.02.120 "forbids hygiene for one year to an indigent Prisoner who was terminated from school, work, or refused a job[.]" Doc. Ent. 1 ¶ 160. Plaintiff also claims that "[t]he MDOC has no provision to provide hygiene if a [prisoner's] hygiene is stolen or lost." Doc. Ent. 1 ¶ 161. Plaintiff appears to be challenging paragraph II.A.4 concerning "placement on indigent list"

---

[5]Plaintiff's contaminated drinking water claim does state that "[a]ll of these omissions viol[a]te [Mich. Comp. Laws §§ 324.5301-324.5316 ("Clean Water Assistance")] and Federal Clean Water Drinking Laws." Doc. Ent. 1 ¶ 165.

In his reply, plaintiff states that the Safe Drinking Water Act of 1974, 42 U.S.C. §§ 300f-300j-25, "'does not' require any 'adverse effects' to [e]nforce the Act. The petitioner simply must demonstrate that there is a contaminate in the water that is over the federal limits as Plaintiff Rouse has shown." Doc. Ent. 121 ¶ 13.

In any event, this report does not construe ¶ 165 of the complaint as alleging an independent SDWA claim but rather as support for plaintiff's Eighth Amendment inhumane treatment claim.

which provides "[a] prisoner is eligible for indigent status if s/he meets all of the following criteria: . . . [t]he prisoner was not terminated from a work or school assignment for unsatisfactory performance or as the result of being found guilty of misconduct, within the 12 months preceding application for indigent status." Doc. Ent. 2-2 at 27 (MDOC PD 04.02.120, effective November 1, 2002). Plaintiff cites to an October 3rd intramural correspondence from inmate Crest, on which it is noted that he is not eligible for indigent status per MDOC PD 04.02.120, apparently on the basis of unemployment. Doc. Ent. 2-2 at 3; Doc. Ent. 121 ¶¶ 23-24. Plaintiff Rouse claims that defendants did not challenge these documents or refute his legal arguments. Doc. Ent. 121 ¶ 25. Plaintiff asserts that "[d]efendants failed to explain how an indigent prisoner can obtain a toothbrush, tooth paste, razors[,] writing materials, etc. if they are denied indigent status via the above policy." Doc. Ent. 121 ¶ 26. However, in light of defendants' foregoing representations with respect to hygiene, the Court should conclude that at this time plaintiff is not entitled to summary judgment on his claim that MDOC PD 04.02.120 "is unconstitutional on its face, [and that] this Court should declare this policy unconstitutional and enjoin its use thereof." Doc. Ent. 121 ¶ 27.

Also, with respect to his medical policies claim, the complaint mentions MDOC PD 03.04.100. Doc. Ent. 1 ¶ 127. Paragraph P of this policy provides, "Health care services may be provided to prisoners through telemedicine, which is a video conferencing system that allows for video, audio and data transmission of information between a prisoner and a health care provider. Only health care services identified by the BHCS Administrator shall be provided via telemedicine, consistent with this policy." MDOC PD 03.04.110, effective 02/14/2005. With respect to "urgent/emergent health services", paragraph CC provides:

13

> Any prisoner who believes s/he has an urgent/emergent health condition may request health care services by notifying staff of the problem which the prisoner believes requires an immediate health care visit. The staff person shall contact health care services and convey the prisoner's request, regardless of the prisoner's custody status or the time or day of the request. The contact shall be responded to by one or more of the following methods, as determined by the QHP:
>
> 1. The prisoner shall be allowed to speak directly to the QHP by telephone.
> 2. The prisoner shall be allowed to go to the health services area.
> 3. The QHP shall go to the prisoner's location to conduct an evaluation.

*Id.* Although plaintiff Rouse claims that defendants' response to his motion with respect to this issue did not acknowledge this policy, did not address the heart of plaintiff's claim, and was "conclusory" and "incorrect", Doc. Ent. 121 ¶ 33, the Court should not at this point "declare [MDOC PD 03.04.100] that permits phone diagnoses by nurses as unconstitutional and enjoin its use with a protective order." ¶ 34.

Finally, with respect to his denial of bathroom use claim, plaintiff Rouse claims that defendants have not refuted the authenticity of what are apparently three pages (mobilizations, formal counts, toplock/loss of privileges) from a 47-page manual. Doc. Ent. 2 at 12-14; Doc. Ent. 121 ¶ 35. Plaintiff also cites to the plaintiffs' affidavits. Doc. Ent. 2 Exhibits G-1 - G-17; Doc. Ent. 121 ¶ 37. Whether these policies are in compliance with *Knop v. Johnson*, 467 F.Supp. 467, 478-479 (W.D. Mich. 1987) or *Turner v. Safley*, 482 U.S. 78 (1987), Doc. Ent. 121 ¶¶ 38-40, are issues better addressed after discovery has taken place. Although plaintiff Rouse claims that defendants "have not given any justification nor have they even admitted to the bathroom denials that are exhibited in this Court[,]" plaintiff is not entitled at this time to a declaration that "these procedures [are] unconstitutional on their face[.]" Likewise, plaintiff would not be entitled to "a protective order to enjoin their enforcement." Doc. Ent. 121 ¶¶ 41-42.

14

**2.** Second, defendants argue that "[p]laintiff's motion for summary judgment is premature at this juncture as the parties have not had the opportunity to engage in discovery." Doc Ent. 105 at 4. Fed. R. Civ. P. 56(c) provides in part that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Furthermore, Fed. R. Civ. P. 56(f) provides in part that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."

**3.** Third, plaintiff Rouse's previously filed motion for summary judgment was denied as premature. On December 11, 2006, plaintiff Rouse filed an "amendment clarification and motion for summary judgment". Doc. Ent. 43. On January 24, 2007, I entered a report recommending that the Court deny plaintiff Rouse's motion for summary judgment. Doc. Ent. 48. I specifically stated:

> Here, plaintiffs bear the ultimate burden of proof at trial on their claims. Thus, to be entitled to summary judgment, plaintiffs must present evidentiary materials which establish each element of their claims for relief. Plaintiffs have not done so. Although plaintiffs have submitted some documentary evidence regarding the contamination of the water supply in St. Louis, Michigan, they have not presented evidence which affirmatively establishes each element of the claims they raise in their complaint. Rather, plaintiff Rouse's motion is premised on defendants' alleged failure to file any valid defenses to plaintiffs' claims. Because plaintiffs bear the ultimate burden of proof at trial, however, this is insufficient to entitle plaintiffs to summary judgment on their claims.
>
> Further, plaintiffs' motion for summary judgment is premature. The principal dispositive issue to this point has been the exhaustion issue, unrelated to the merits of the claims, and to date it does not appear that the parties have

15

conducted any discovery relating to the claims in the complaint. Thus, plaintiff Rouse's motion for summ

*Patel*, 411 F. Supp. 2d 397, 405 (S.D.N.Y. 2006); *Bynum v. District of Columbia*,
215 F.R.D. 1, 2 (D.D.C. 2003); *Badalament, Inc. v. Mel-O-Ripe Banana Brands,
Ltd.*, 265 B.R. 732, 736 (E.D. Mich. 2001) (Hood, J.).

Doc. Ent. 48 at 4-5. On March 23, 2007, Judge Gadola entered an order denying as premature plaintiff Rouse's motion for summary judgment. Doc. Ent. 85.

**4.** Fourth, on February 28, 2008, plaintiff filed a "motion to change address and stay Rouse's pending motions". Doc. Ent. 155.[6] Within this filing, plaintiff requests that his other pending motions be stayed until further notice. Doc. Ent. 155 at 1 ¶ 3.

## III. **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers*, AFL-CIO, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[6]It is dated February 24, 2008 and states that he will be released on parole on or about February 27, 2008. Doc. Ent. 155 at 1 ¶ 1. He requests that his address be changed to P.O. Box 553, Hamburg, Michigan 48139. Doc. Ent. 155 at 2. Plaintiff's last filing, his May 29, 2008 motion for time enlargement, bears the Hamburg address. Doc. Ent. 172 at 3.

16

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 8/25/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 25, 2008.
>
> s/Eddrey Butts
> Case Manager