UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE, CLAUDE HOFFMAN, GUY
CURTIS, MICHAEL KANIPE, DOUGLAS
WARNER, CARLTON RIDER, DANNY FRITTS,
RICHARD BOONE II, TONY PELLIN, MARK
ASHLEY, TERRY GEORGE, WILLIAM
TAYLOR, LOREN WICKER, MICHAEL LAKE,
STEWART GATES, ROBERT McMURRAY,
ERICK DeFOREST, ANTONIO MANNING,
HILTON EVANS, JOHN DOE, ONE through
SEVEN, on behalf of themselves and all other
similarly situated individuals,

        Plaintiffs,

        v.

MDOC DIRECTOR PATRICIA CARUSO,
WARDEN BLAINE LAFLER, AND DEPUTY
WARDEN BARBARA MEAGHER, THEIR
SUPERIORS, SUBORDINATES, SUB-
CONTRACTORS, CONTRACTORS,
REPLACEMENTS, PREDECESSORS, AND
JOHN/JANE DOE, EIGHT through FOURTEEN, in
their individual and official capacity,

        Defendants.

_____/

CASE NO. 06-CV-10961-DT
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON (1) DEFENDANTS' MOTION TO DISMISS
(docket #226); (2) DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS (docket #230); AND (3) DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT (docket #231)**

I.    <u>RECOMMENDATION</u>: The Court should grant defendants' motion to dismiss, grant in part

and deny in part defendants' motion for partial judgment on the pleadings, and grant in part and deny

in part defendants' motion for partial summary judgment.

II.    <u>REPORT</u>:

1

A.     *Background*

Plaintiffs, nineteen current and former inmates of the St. Louis and Mid-Michigan Correctional Facilities in St. Louis, Michigan, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on March 3, 2006.  Plaintiffs bring claims, on behalf of themselves and a purported class of all prisoners at the St. Louis and Mid-Michigan Correctional Facilities[1], against the defendant prison officials relating to the conditions of confinement at the facilities.  Plaintiffs' complaint is divided into five claims for relief: (1) an Eighth Amendment claim based on denial of medical care and medication, dangerous noise levels, denial of restroom use, serious disease outbreaks, and prisoners being forced to wait in the cold to receive medications; (2) an Eighth Amendment claim based on cold cubicles and poor ventilation, cramped living space, denial of hygiene, and contaminated drinking water; (3) an Eighth Amendment claim based on the lack of a proper fire suppression system, overcrowded conditions, and prisoner access to inmates' files; (4) a First Amendment access to courts claim based on inadequate law library time and inadequate law library resources; and (5) a Fourteenth Amendment due process claim based on removal of property without a proper hearing and removal of funds from prisoner accounts without hearing and in excess of that authorized by law.

Five plaintiffs were subsequently dismissed from the action, and *pro bono* counsel was appointed to represent the remaining 14 plaintiffs.  On October 21, 2008, counsel filed an amended complaint.  In the amended complaint plaintiffs, now consisting solely of current or former inmates

---

[1]On October 17, 2010, the Mid-Michigan Correctional Facility was consolidated with the Pine River Correctional Facility.  The consolidated facility is now known as the Central Michigan Correctional Facility.  It appears that this represented an administrative change only; the facilities remain the same.  *See* MICHIGAN DEP'T OF CORRECTIONS, *F.Y.I.*, at 4 (Sept. 16, 2010) (available at http://www.michigan.gov/documents/corrections/2010-09-16_332669_7.pdf).  For simplicity, I use the MDOC's "STF" designation, used for both the former Mid-Michigan Correctional Facility and the current Central Michigan Correctional Facility, to designate the facility throughout this Report.

2

of STF, assert three counts, broken down into numerous subparts, some of which are further broken

down into sub-subparts, as illustrated in the following chart:

| COUNT | CLAIM | SUBPART | SUB-SUBPART | AMEND. COMPL. |
|-------|-------|---------|-------------|---------------|
| I | Eighth Amendment Violations | (A) Cruel & Unusual Punishment | (1) Denial of Medical Care | ¶¶ 27-29 |
| | | | (2) Dangerous Noise Levels | ¶¶ 30-31 |
| | | | (3) Denial of Bathroom Use | ¶¶ 32-33 |
| | | | (4) Disease Outbreaks | ¶¶ 34-39 |
| | | | (5) Medline Prisoners Forced into Cold | ¶ 40 |
| | | (B) Inhumane Treatment | (1) Cold Cubicles and Poor Ventilation | ¶¶ 41-44 |
| | | | (2) Crammed Living Space | ¶¶ 45-47 |
| | | | (3) Denial of Hygiene | ¶¶ 48-49 |
| | | | (4) Contaminated Drinking Water | ¶¶ 50-52 |
| | | (C) Unsafe Living Conditions | (1) Lack of Fire Suppression System | ¶¶ 53-55 |
| | | | (2) Overcrowding | ¶¶ 56 |
| | | | (3) Access to Prisoner's Personal Files | ¶¶ 57-58 |
| II | First, Fifth, and Fourteenth Amendment Access to Courts Violations | (A) Inadequate Law Library Time | | ¶¶ 59-61 |
| | | (B) Limited Law Books | | ¶¶ 62-64 |
| | | (C) Seizure of Property and Legal Materials | | ¶¶ 65-66 |
| III | 14th Amendment Due Process Violations | Removal of Property or Money without a Hearing | | ¶¶ 67-73 |

The named defendants are Patricia Caruso, Director of the Michigan Department of Corrections

(MDOC); Blaine Lafler, the Warden at STF during the relevant time period; and Barbara Meagher, a Deputy Warden at STF during the relevant time period. The complaint also names as defendants unknown employees of Correctional Medical Services, Inc., and unknown MDOC employees in the Bureau of Health Care Services. Plaintiffs seek $10,000,000.00 in compensatory damages, as well as declaratory and injunctive relief.[2]

On March 23, 2010, counsel sought to withdraw with respect to eight of the remaining fourteen plaintiffs, based on their inability to contact these plaintiffs and these plaintiffs' failure to appear for their depositions or provide requested discovery. I granted counsel's motion to withdraw on April 30, 2010. The remaining plaintiffs represented by counsel are Claude Hoffman, Michael Kanipe, Richard Boone, William Taylor, Michael Lake, and Hilton Evans. The remaining plaintiffs who are no longer represented by counsel are Arthur Rouse, Danny Fritts, Tony Pellin, Stewart Gates, Terry George, Mark Ashley, Robert McMurray, and Eric DeForest.

The matter is currently before the Court on three dispositive motions filed by the named defendants. First, on April 20, 2010, defendants filed a motion to dismiss the eight unrepresented plaintiffs for failure to cooperate in discovery pursuant to FED. R. CIV. P. 37(d) and for failure to prosecute pursuant to FED. R. CIV. P. 41(b). No plaintiff has filed a response to this motion. Second, on June 1, 2010, defendants filed a partial motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). This motion seeks dismissal for failure to state a claim of plaintiff's Eighth Amendment claims alleging denial of medical care (Claim I(A)(1)), denial of bathroom use (Claim I(A)(3)), disease outbreak (Claim I(A)(4)), medline prisoners being forced to wait in the cold (Claim I(A)(5)),

---

[2]For ease of reference, I will refer to the claims raised by plaintiffs using the letters and numbers provided in the foregoing chart. Thus, plaintiffs' denial of medical care claim will be referred to as Claim I(A)(1), and so on.

cold cubicles (¶ 41 of Claim I(B)(1)), denial of hygiene (Claim I(B)(3)), contaminated drinking water (Claim I(B)(4)), and access to prisoner's personal files (Claim I(C)(3)). The motion also seeks dismissal for failure to state a claim of Counts II and III of the amended complaint. The represented plaintiffs filed a response to the motion on July 6, 2010, and defendants filed a reply on July 20, 2010. No unrepresented plaintiff has filed a response to the motion. Third, also on June 1, 2010, defendants filed a motion for partial summary judgment pursuant to FED. R. CIV. P. 56. Defendants contend that they are entitled to summary judgment on the merits of plaintiffs' Eighth Amendment claims alleging excessive noise (Claim I(A)(2)), inadequate ventilation (¶¶ 42-44 of Claim I(B)(1)), overcrowding (Claims I(B)(2) and I(C)(2)), contaminated drinking water (Claim I(B)(4)), and lack of fire safety (Claim I(C)(1)). Defendants also contend that they are entitled to summary judgment on plaintiff's hygiene and fire safety claims (Claims I(B)(3) and I(C)(1)) based on their lack of personal involvement. Defendants further argue that they are entitled to qualified immunity with respect to plaintiffs' claims against them in their individual capacities and to Eleventh Amendment immunity with respect to plaintiffs' claims against them in their official capacities. Finally, defendants argue that because none of the plaintiffs is still incarcerated at the St. Louis Correctional Facility, their claims for injunctive relief are moot. The represented plaintiffs filed a response to this motion on July 6, 2010, and defendants filed a reply on July 20, 2010. None of the unrepresented plaintiffs has filed a response to this motion.

B.      *Defendants' Motion to Dismiss the Unrepresented Plaintiffs*

In the first motion pending before the Court, defendants seek dismissal of the eight unrepresented plaintiffs for failure to cooperate in discovery or for failure to prosecute. The Court should grant defendants' motion and dismiss these plaintiffs for failure to prosecute the action.

1.      *Dismissal for Failure to Cooperate in Discovery*

5

Defendants first move to dismiss the unrepresented defendants pursuant to FED. R. CIV. P. 37(d), based on their failure to provide discovery. Rule 37(d) provides, in relevant part, that

> [t]he court where the action is pending may, on motion, order sanctions if:
>     (I) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
>     (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

FED. R. CIV. P. 37(d)(1)(A). The rule further provides that "[s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." FED. R. CIV. P. 37(d)(3). The sanctions referenced in Rule 37(b), in turn, include "dismissing the action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(v). Ordering dismissal or default[3] to sanction a party to the litigation is usually reserved for situations akin to contempt of court or other abusive practices. *See, e.g., Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). Generally, this sanction is not available unless the conduct of the complaining party was done willfully, maliciously, or in bad faith. *See, e.g., National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976) (per curiam). Before imposing a sanction of dismissal or default, a court should consider the prejudice to the complaining party, the degree of the wrongdoer's culpability, the availability of other measures to redress the problem, and the societal interest in the efficient administration of justice. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993), *cited with approval by Coleman v. American Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994). As the Sixth Circuit has summarized, in determining whether dismissal is an appropriate sanction for failure to comply with

---

[3]The Court applies the same standard to determine whether default is an appropriate sanction as it does to determine whether dismissal is appropriate. *See Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990); *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 459-60 (S.D. Ohio 1995); *In re Sams*, 123 B.R. 788, 790 (Bankr. S.D. Ohio 1991).

discovery orders, a court should consider four factors:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the [offending] party's failure to cooperate in discovery; the third factor is whether the [offending] party was warned that failure to cooperate could lead to dismissal; and the fourth factor is whether less drastic sanctions were imposed or considered before dismissal [is] ordered.

*Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995); *accord Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). "Consideration of these factors should be given with reference to the dual purposes underlying the use of dismissal as a sanction for willful noncompliance with discovery, namely, of punishing the offending party and deterring future litigants from engaging in similar misconduct." *Reese Corp. v. Rieger*, 201 B.R. 902, 907 (E.D. Mich. 1996) (citing *Bass*, 71 F.3d at 241). Further, all these factors must be weighed against the strong policy that favors disposition of cases on their merits. *See Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993); *see also, Shaffer Equip.*, 11 F.3d at 462; *Reese Corp.*, 201 B.R. at 907 ("Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits is dismissal appropriate.") (citing *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.7 (10th Cir. 1988)).

Here, even if the unrepresented plaintiffs' failure to respond to discovery requests and appear for their depositions constitutes the type of willful conduct supporting a sanction of dismissal, the other factors all point to the opposite conclusion. First, defendants have not asserted any prejudice resulting from plaintiffs' conduct. This is not a case in which defendants have been unable to investigate plaintiff's claims right up to the eve of trial. *See, e.g., Taylor v. Medtronics*, 861 F.2d 980, 986 (6th Cir. 1988) (finding prejudice where "the dilatory tactics of the plaintiffs effectively prevented the defendants from engaging in further discovery after the deposition because of the close proximity of the trial date."); *Brinkman v. Dallas County Deputy Sheriff Abner*, 813 F.2d

744, 750 (5th Cir. 1987) (finding prejudice where plaintiff had failed to respond to discover and scheduled trial date was one week from date of dismissal). Further, there is no suggestion by defendants that any evidence sought by the discovery requests is now unavailable due to the delay. *Accord Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952-53 (4th Cir. 1987) (finding no prejudice where "[t]here was no missing witness in the case whose testimony was made unavailable by the delay; . . . neither was there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay."); *see also, Bass*, 71 F.3d at 242 (finding prejudice, in part, because many of the defendant's witnesses where no longer available to be deposed or testify). To be sure further, repeated failures to respond may eventually result in this type of prejudice, but at this stage such prejudice is lacking. In short, the most significant prejudice suffered by defendants at this stage of the proceedings is some delay in receiving this information and the costs involved with securing this discovery. However, this prejudice is remediable through other sanctions, and is not sufficient to warrant the extreme sanctions of dismissal and default judgment. *See, e.g., Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) ("[T]he delay involved in this case, by itself, would not be sufficient to warrant dismissal absent other justifying circumstances."); *Shea v. Donohoe Constr. Co., Inc.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986) (finding no actual prejudice where only prejudice suffered was costs which could be adequately compensated for by monetary sanctions).

Further, the third factor weighs against dismissal because plaintiffs have been neither previously sanctioned for their discovery conduct nor warned that repeated failures to provide the requested discover could result in default. *See Bass*, 71 F.3d at 242 (magistrate judge explicitly warned counsel that failure to comply would result in recommendation that case be dismissed both at hearing and in conditional report and recommendation); *Ehrenhaus*, 965 F.2d at 921 (court

8

adequately put plaintiff on notice that dismissal would be forthcoming by inviting defense counsel to file motion to dismiss if plaintiff failed to provide the ordered discovery); *Taylor*, 861 F.2d at 986 (sanction of dismissal appropriate where court "gave plaintiffs an explicit warning that dire consequences would follow any further abuse."); *In re McDowell*, 163 B.R. 509, 512 (Bankr. N.D. Ohio) (dismissal appropriate where "[t]he Second Show Cause Order placed the Debtor on notice that failure to comply with the Pretrial Order would result in dismissal.").

Finally, the fourth factor also weighs against dismissal. As noted above, the Court has not previously imposed lesser sanctions which have proven ineffective and there is no suggestion in the record that such sanctions will be ineffective. *See, e.g., Bass*, 71 F.3d at 242-43 (sanction of dismissal appropriate where party failed to respond to courts order despite previous imposition of monetary sanctions); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1413 (9th Cir. 1990) (finding this factor satisfied where party had previously been sanctioned and found in contempt); *Taylor*, 861 F.2d at 986 (finding this factor satisfied where "it [was] clear from the record that the court's use of sanctions was measured, gradual, and in proportion to the plaintiffs' misconduct."). Accordingly, the Court should conclude that defendants are not entitled to dismissal of the eight unrepresented plaintiffs' claims pursuant to Rule 37(d).[4]

2.      *Dismissal for Failure to Prosecute*

Nevertheless, the Court should conclude that defendants are entitled to dismissal under Rule 41 based on these plaintiffs' failure to prosecute the action. In support of this argument, defendants note the following facts, which are undisputed at this point: (1) the unrepresented plaintiffs have failed

---

[4]Defendants' motion is limited to their request for entry of a default judgment. Accordingly, I express no opinion as to whether defendants are entitled to monetary sanctions and, if so, in what amount. The disposition of this motion is without prejudice to defendants filing a properly supported motion for monetary sanctions under FED. R. CIV. P. 30, 37.

to provide discovery and make themselves available for deposition; (2) they have failed to keep in contact with counsel, or provide either counsel or the Court with their new contact information;[5] and (3) they have failed to respond to any of the pending dispositive motions, including the motion to dismiss for failure to prosecute.

Rule 41 provides, in relevant part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).  In determining whether dismissal is appropriate for failure to prosecute, the Court applies the same four factors that it applies to the dismissal inquiry under Rule 37.  *See Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590 (6th Cir. 2001).  That the same factors are considered, however, does not mean that the conclusion reached under Rule 37(d) controls the Court's analysis under Rule 41(b).  Although the factors are the same, the *facts* bearing on those factors is broader. With respect to the willfulness inquiry, for example, evidence of plaintiffs' willfulness includes not only their failures with respect to the discovery matters, but also their failures to respond to the pending dispositive motions and provide counsel or the Court with current contact information. Likewise, under Rule 37 no prejudice was shown based on the assumption that the discovery sought by defendants could be obtained, and that at this point the only prejudice suffered by defendants was in time and money, which could be compensated by other sanctions.  Being unable to locate plaintiffs, however, renders this assumption invalid, and precludes defendants from being able to properly

---

[5]According to the Michigan Department of Corrections' Offender Tracking Information System (OTIS) website (http://www.state.mi.us/mdoc/asp/otis2.html), six of the eight unrepresented plaintiffs–Rouse, Fritts, Pellin, Gates, George, and Ashley–have been discharged from their sentences and are no longer under the jurisdiction of the MDOC.  Only plaintiff DeForest is still incarcerated, albeit now at the Marquette Branch Prison.  OTIS contains no record of plaintiff Robert McMurray, regardless of whether he is searched for by name or by the prisoner number attributed to him in plaintiffs' original complaint.

10

defend themselves against these plaintiffs' claims. Likewise, although plaintiffs have not been warned of the possibility of dismissal through a court order, they were so warned by this Court's local rules, which provide that an attorney or unrepresented party must promptly file new contact information when there is a change of such information, and that "[t]he failure to file promptly current contact information may subject that person or party to appropriate sanctions, which may include dismissal, default judgment, and costs." E.D. MICH. LR 11.2. And this factor, in any event, is less important where, as here, plaintiffs' conduct "demonstrate [their] lack of interest in prosecution this action." *Ali v. Hilton Gateway*, No. 05-2459, 2007 WL 121453, at \*2 (D.N.J. Dec. 15, 2006). "Plaintiff[s'] failure to keep the Court informed of [their] address[es] and to participate in discovery [and motion practice] prevents the case from proceeding in the foreseeable future" with respect to these plaintiffs. *Williams v. Maricopa County Sheriff's Office*, No. CV-04-2901, 2006 WL 2091713, at \*2 (D. Ariz. July 24, 2006). Considered as a whole, the unrepresented plaintiffs' inaction warrants dismissing these plaintiffs pursuant to Rule 41(b). *See Burke v. Morgan*, No. 06-CV-348, 2009 WL 514314, at \*2 (E.D. Ky. Mar. 2, 2009); *Young v. Los Angeles County Sheriff's Dep't*, No. CV 07-3586, 2008 WL 2096898, at \*2 (C.D. Cal. May 13, 2008); *Doornbos v. Pilot Travel Ctrs., LLC*, No. 3:05-cv-428, 2008 WL 4764334, at \*3 (E.D. Tenn. Oct. 27, 2008); *Burns v. Glick*, 158 F.R.D. 354, 356 (E.D. Pa. 1994). Accordingly, the Court should grant defendants' motion to dismiss for failure to prosecute, and should dismiss the claims of plaintiffs Rouse, Fritts, Pellin, Gates, George, Ashley, McMurray, and DeForest pursuant to Rule 41(b).

C.    *Defendants' Motions for Judgment on the Pleadings*

In their next dispositive motion, defendants seek judgment on the pleadings pursuant to Rule 12(c) with respect to plaintiffs' Eight Amendment claims alleging denial of medical care, denial of bathroom use, disease outbreak, being forced to wait in the cold for medication, cold cubicles, denial

11

of hygiene, contaminated drinking water, and access to prisoner's personal files, as well as plaintiff's access to courts and due process claims.

    1.    *Legal Standard*

Rule 12(b)(6) provides that a party may, by way of motion instead of responsive pleading, assert as a defense that the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such a motion "must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Rule 12 further provides, however, that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Although presented later in the case, a motion for judgment on the pleadings is equivalent to a motion to dismiss and is governed by the same legal standard. *See Johnson v. Dodson Public Schs., Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151, 1155 (D. Mont. 2006); *Ganthier v. North Shore-Long Island Jewish Health Sys.*, 298 F. Supp. 2d 342, 346 (E.D.N.Y. 2004); *cf. Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

        Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

12

"short and plain statement of the claim showing that the pleader is entitled to relief."
As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544 [(2007)], the
pleading standard Rule 8 announces does not require "detailed factual allegations," but
it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.
*Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers
"labels and conclusions" or "a formulaic recitation of the elements of a cause of action
will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked
assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at
570. A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability
requirement," but it asks for more than a sheer possibility that a defendant has acted
unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a
defendant's liability, it "stops short of the line between possibility and plausibility of
'entitlement to relief.' " *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that
a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although
for the purposes of a motion to dismiss we must take all of the factual allegations in
the complaint as true, we "are not bound to accept as true a legal conclusion couched
as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable
and generous departure from the hyper-technical, code-pleading regime of a prior era,
but it does not unlock the doors of discovery for a plaintiff armed with nothing more
than conclusions. Second, only a complaint that states a plausible claim for relief
survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a
plausible claim for relief will . . . be a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense. But where the
well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is
entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can
choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth. While legal conclusions can
provide the framework of a complaint, they must be supported by factual allegations.
When there are well-pleaded factual allegations, a court should assume their veracity
and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court

considers matters outside the pleadings, the court must convert the motion into one for summary

13

judgment under Rule 56.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997); FED. R. CIV. P. 12(d).  Here, plaintiffs have attached matters outside the pleadings to their response to defendants' motion for judgment on the pleadings.  The Court should exclude these materials and decide the motion solely on the basis of the pleadings, for two reasons.  First, although plaintiffs provide and at times rely on these materials, their response argues solely that defendants' motion should be denied under the Rule 12(b)(6) standard for dismissal.  They do not make a summary judgment argument, nor have they requested that the Court convert the motion to one for summary judgment as provided for in Rule 12(d).  Second, the evidence relates only to some of the claims at issue in defendants' motion, and then only with respect to some of the remaining plaintiffs.  The Court would thus be required to partially address the motion under the summary judgment standard, while addressing other parts of the motion under the Rule 12(b)(6) standard.  The better course is to simply exclude the materials and address the sufficiency of the complaint, as called for by defendants' motion.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994).  It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right."  *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution."

14

*Iqbal*, 129 S. Ct. at 1948.  In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).  Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

    2.    *Eighth Amendment Claims (Count I)*

        *a.  Eighth Amendment Standard*

15

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125,

16

128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

17

Plaintiff claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105.  Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

### b.  Denial of Medical Care (Claim I(A)(1))

With respect to their medical care claims, plaintiffs make the following allegations in their amended complaint:

12.    As the recent prisoner population at the MMC has increased, the number of medical staff has remained the same.  Before the most recent doctor, Jonathan Altman, quit, there was a ratio of one doctor and four nurses to 1,040 prisoners.  Since Dr. Altman left, the MMC has only the four nurses and a visiting physician's assistant.  The PA is only at the MMC twice a week which leaves the prisoners without proper care and violates MDOC's own policies.

13.    There is no medical staff at the MMC after 8 p.m. or on weekends.  The only medical care given at those times are at outside hospitals, if a prisoner can prove that they [sic] are suffering from a life-threatening emergency.

14.    The policy for Emergency Medical Care gives nurses and doctors the authority to diagnose patients without first examining them, and without knowing their vital signs and medical history.  This is a violation of professional medical standards, state law, and the 8th Amendment of the U.S. Constitution, by intentional infliction of pain without a legitimate penalogical reason.

15.    Eye exams and dental work required a year-long (and in some cases, even longer) wait.  Medication often runs out, causing serious medical problems.

          * * * *

27.    Defendants have denied Plaintiffs life's minimal necessities.    Such

deprivations consisted of but were not limited to the following:

> a.      The MMC has insufficient medical staff, which has negatively impacted Plaintiffs and lead to various injuries, including but not limited to:

> b.      Denial of proper medical care and accessories such as a brace for a pre-existing club foot, medication for pain and arthritis, and denial of proper tests to determine if high-risk Plaintiffs have cancer; all of which have resulted in pain and suffering.

> c.      Nurses giving examinations without regard to Plaintiffs' health records, scratching a Plaintiff's eye when examining him with a dye stick (resulting in a bleeding eye), and refusing tests to save money.

> d.      Some Plaintiffs and putative class members were on psychiatric medication for years despite never having seen a psychiatrist. Psychiatrists are not available at MMC; nurses prescribed the medication.

> e.      Many other putative class members have been denied treatment for medical ailments such as high blood pressure, high cancer counts, and enlarged prostates, despite needing the treatment. This is to cut costs and for the prison to save money.

28.      The above allegations have resulted in Plaintiffs' and putative class members' unnecessary pain and suffering.

Amended Compl., ¶¶ 12-15, 27-28.

Defendants argue that plaintiff's medical care claims fail to state a claim upon which relief may be granted because they do not allege an objective medical need or subjective knowledge on the part of the defendants. They further argue that these allegations relate to issues cared for by medical staff, issues in which they had no involvement. The Court should disagree. Defendants' arguments would certainly be correct if plaintiffs' were alleging discrete medical issues which were handled by individual doctors or nurses. Plaintiffs, however, are not presenting this type of claim. As the courts have recognized, deliberate indifference "'may occur on an individual level, such as when a doctor intentionally mistreats an inmate . . . or on an institutional level, when the prisoner's system of medical care is so seriously inadequate as to cause unwarranted suffering.'" *Dean v. Coughlin*, 107

19

F.R.D. 331, 333 (S.D.N.Y. 1985) (quoting *Cruz v. Ward*, 558 F.2d 658, 662 (2d Cir. 1977)) (alteration in original).  It is this second type of claim that plaintiffs are bringing.  And, "[w]hen a prisoner class seeks to challenge an entire health care system, deliberate indifference to their health needs can be shown either by repeated acts which disclose a pattern of conduct by the prison medical staff, or by evidence of such systemic deficiencies in staffing, facilities, or procedures that unnecessary suffering is inevitable." *Id.*; *see also*, *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 206 (D.P.R. 1998); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982).[6]

Plaintiffs' amended complaint sufficiently alleges these types of systemic deficiencies. Plaintiffs allege that the facility is staffed by only four nurses and no doctors, and that there is no medical staff present after 8 p.m. or on weekends.  They allege that these deficiencies result in inadequate, improper, or a total lack of care.  Whether plaintiffs will be able to prove these allegations is not before the Court, and indeed proof of such a systemic claim "entails a heavy burden." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999).  Plaintiffs allegations are sufficient to state a systemic medical claim under the Eighth Amendment.  Further, they are adequate to allege the personal involvement of the defendant supervisory officials, as the claims stem not from individual treatment decisions of particular medical professionals, but the staffing and policy decisions of the supervisory officials.  *See Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003) (internal quotation omitted) ("The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged

---

[6]While the Court previously denied plaintiffs' motion for class-certification, this was because, at the time, plaintiffs were proceeding *pro se*, and *pro se* plaintiffs may not maintain a class action.  *See Ziegler v. Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004).  Until they are ruled upon on the merits, plaintiffs' class allegations asserted in the Amended Complaint filed by counsel remain viable.

deprivation, and he fails to do so."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir.1996) (supervisory officials "can be expected to know of or participate in creating systemic, as opposed to localized, situations."). Accordingly, the Court should conclude that defendants are not entitled to dismissal of plaintiffs' medical claims.

### c. Denial of Bathroom Use (Claim I(A)(3))

The Court should conclude, however, that defendants are entitled to dismissal of plaintiffs' claim alleging denial of bathroom use. In this claim, plaintiffs allege:

> 32.     Plaintiffs and putative class members are denied bathroom use at the MMC during count time, which takes place six times a day, for 30 minutes or more each time. This includes first thing in the morning after sleeping for six to eight hours. This has caused pain, suffering, and bladder problems.

> 33.     Prisoners are also denied bathroom use during Fire Drills and on Top Lock, for up to four hours without any legitimate penalogical reason. Prisoners are issued a major misconduct ticket if they violate this rule.

Amend. Compl., ¶¶ 32-33.

The Eighth Amendment prohibits conditions of confinement that amount to cruel and unusual punishment and manifest a wanton infliction of pain. It does not prohibit conditions of confinement that "cause mere discomfort or inconvenience." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (internal quotation omitted). As the Supreme Court has explained, "extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8-9 (internal citations and quotations omitted). Temporary restrictions on bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or

21

safety.  *See Abdur-Raheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at * (6th Cir. Nov. 12, 1999) ("[T]he Eighth Amendment does not require that prisoner enjoy immediately available . . . toilets."); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during 3-5 hour period of cell "shakedown" did not state Eighth Amendment claim); *Owens v. Padilla*, No. C 06-4778, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); *Trevino v. Jones*, No. 06-CV-0257, 2007 WL 710213, at *8 (N.D. Okla. Mar. 06, 2007) (use of restrooms only twice during eight hour period does not constitute cruel and unusual punishment).  Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to this claim.

### d.  Disease Outbreaks (Claim I(A)(4))

Plaintiffs also allege that MMC has had many outbreaks of Community Associated Methicillin Resistant Staphylococcus Aureus (MRSA) that is caused or exacerbated by the conditions of confinement and which defendants have failed to stop.  *See* Amended Compl., ¶¶ 34-39.  Defendants argue that these allegations fail to state a claim upon which relief may be granted because plaintiffs do not allege that they have contracted MRSA, and because plaintiff's allege only that certain conditions of confinement may have contributed to the outbreak, but they do not allege any acts or omissions of defendants that created an unreasonable risk of injury.  The Court should agree.  The fact, as alleged by plaintiffs, that they may have been exposed to "some risk" of contracting MRSA is insufficient to state a claim.  *See Oliver v. Bucks County Correctional Facility*, 181 Fed. Appx. 287, 289 (3d Cir. 2006), *cited with approval by Wooler v. Hickman County, Ky.*, 377 Fed. Appx. 502, 505 (6th Cir. 2010).  Further, the complaint contains no allegations suggesting that defendants knew of the alleged outbreaks or of the risk of such outbreaks, and therefore it fails to allege that defendants were deliberately indifferent under the subjective prong of the Eighth Amendment standard.  *Cf.*

22

*Stewart v. Taft*, 235 F. Supp. 2d 763, 769-70 (N.D. Ohio 2002). Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to this claim.

### e. Medline Claim (Claim I(A)(5))

Plaintiffs next allege that "MMC prisoners are forced to stand outside in the cold and rain, with temperatures that may fall below single digits to pick up their medications for up to 45 minutes." Amended Compl., ¶ 40. Plaintiffs do not allege, however, that they are forced to do so without adequate clothing to protect them from the elements, or that this practice has resulted in any harm. *Cf. Chandler v. Moore*, 2 F.3d 847, 848 (8th Cir. 1993) (being forced to wait in cold and rain *without adequate protective clothing* states Eight Amendment claim). "Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment." *Whitington v. Ortiz*, No. 07-1425, 2009 WL 74471, at *6 (10th Cir. Jan.13, 2009). An allegation that prisoners were "standing in inclement weather," without more, is not "'sufficiently serious to violate the Eighth Amendment.'" *Taylor v. Mosley*, No. 2:04CV39, 2006 WL 1475780, at *5 (M.D. Ala. May 25, 2006) (quoting *Hudson*, 503 U.S. at 8). Plaintiff's allegations therefore fail to state an Eighth Amendment claim. *See Fearance v. Schulteis*, No. 1:08-cv-00615, 2010 WL 582050, at *2 (E.D. Cal. Feb. 12, 2010) ("the mere allegations of inadequate clothing and exposure to cold are insufficient, as discomfort alone is not sufficient to violate the Eighth Amendment."); *Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 563 (W.D. Va. 2000) (complaint failed to state a claim where prisoner did "not allege that exposure of his feet to subfreezing temperatures, rain or snow during the brief walks between buildings caused severe pain, disfigurement or life-threatening risks."). Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to this claim.

### f. Cold Cubicles (¶ 41 of Claim I(B)(1))

Plaintiffs next allege that their Eighth Amendment rights were violated by defendants because,

due to inadequate windows, insulation, and thermostats, "rear cubicles [are] cold." Amended Compl., ¶ 41. While the Eighth Amendment requires that prison officials avoid exposing prisoners to prolonged periods of extreme heat or cold, plaintiffs' bare allegation that some cells are "cold" is insufficient to state an Eighth Amendment claim. *See Jenkins v. Livingston*, No. 6:09cv560, 2010 WL 3853099, at *8 (E.D. Tex. Aug. 31, 2010) (citing *Johnson v. Texas Bd. of Criminal Justice*, 281 Fed. Appx. 319, 321 (5th Cir.2008) (per curiam)) ("Vague allegations of cold and heat in a prison environment, without an assertion of bodily injury, are insufficient to state a violation of the Eighth Amendment."); *Williams v. Grant*, No. CV408-203, 2009 WL 3317262, at *4 (S.D. Ga. Oct. 14, 2009) ("Here, however, Williams has not alleged enough. Under *Iqbal*, he must supply more than conclusions and vague assertions like 'cold bare cell' phraseology."); *Spitsyn v. Morgan*, No. C04-5134, 2008 WL 714095, at *17 (W.D. Wash. Mar. 14, 2008) (complaint failed to state a claim where "plaintiff merely claim[ed] . . . that the temperature was cold in his cell."); *Moore v. Monahan*, No. 06 C 6088, 2008 WL 111299, at *9 (N.D. Ill. Jan. 10, 2008) (citations omitted) (quoting *Bell Atlantic*, 127 S.Ct. at 1959) ("Here, Moore's allegations that his cell was inadequately heated in the winter and extremely hot in the summer does not create any . . . inference [of deliberate indifference]. Put differently, Moore's bare-boned allegations do not suggest that he has a "right to relief above the speculative level."). Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to this claim.

### g.  Denial of Hygiene (Claim I(B)(3))

Plaintiffs also allege that "[t]he MDOC has a policy that forbids hygiene for one year to an indigent prisoner who was terminated from school, work, or refused a job." Amended Compl., ¶ 48. Defendants do not contend that such a denial of hygiene states an Eighth Amendment claim, nor could they. *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) ("A prisoner whose inability to purchase

24

hygiene items results from his rejection of educational status satisfies the objective and subjective requirements of an Eighth Amendment violation when he alleges a complete deprivation and shows that the deprivation resulted from a deliberate indifference to hygiene needs."). Rather, defendants argue that this claim fails because "[t]here is no allegation . . . that any of the named plaintiffs were denied hygiene products . . . ." Br. in Supp. of Def.s' Mot. for Partial Judgment on the Pleadings, at 10. As with plaintiffs' medical claims, plaintiffs' denial of hygiene claims are brought on behalf of a proposed class of prisoners, and allege a systemic deprivation under the Eighth Amendment. Thus, as with plaintiff's medical claims, the failure to allege specific harm to each named plaintiff does not warrant dismissal at this time. Accordingly, the Court should deny defendants' motion for judgment on the pleadings with respect to this claim.[7]

*h. Contaminated Drinking Water (Claim I(B)(4))*

Defendants next seek dismissal of plaintiffs' claims that they are forced to consume contaminated drinking water. With respect to this claim, plaintiffs allege:

24.     Saint Louis was added to the Federal Toxic Superfund Cleanup Site. It may be this "nation's costliest environment" cleanup.

25.     DDT and other chemicals have polluted Pine River. Parachlorobenzene sulfonic acid (p-CBSA), is a byproduct of DDT and has been found in the city's drinking water in levels up to 11 times higher than the EPA's safety threshold.

26.     The three St. Louis prisons, which hold about 3,000 inmates, were notified of the water contamination, but staff refused to do anything but put bottled water in the store for those who could afford to buy it. Inmates' food was prepared with tap water and those who cannot afford bottled water drink tap water as well.

        * * * *

---

[7]Defendants also move for summary judgment with respect to this claim. Application of the summary judgment standard to this claim is discussed below.

50.     As cited previously, Saint Louis is the only location in the U.S. where the drinking water is contaminated with p-CBSA, a by-product of DDT.  After the EPA alerted the Saint Louis prisons that the three wells were contaminated, they did not supply the prisoners with fresh drinking water.

51.     No one knows what other chemicals are in the water, nor do they know the long term effects of these toxic chemicals.

52.     The Defendants have been informed of these problems and have chose to do absolutely nothing about them [in violation of state and federal laws].

Amended Compl., ¶¶ 24-26, 50-52.  The Court should conclude that these allegations state an Eighth Amendment claim.

An allegation that prisoners have been exposed to toxic substances can state an Eighth Amendment claim, even without an allegation of present harm.  *See Helling*, 509 U.S. at 33 ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. . . . We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.").  Here, plaintiffs have alleged that they are exposed to drinking water contaminated with p-CBSA, a by-product of DDT.  Defendants's assertion that "there is no factual allegation . . . on which a jury could conclude that the water was contaminated," Def.s' Br., at 10, is simply incorrect.  As set forth above, the Amended Complaint alleges that the drinking water is contaminated with p-CBSA above the EPA's safety threshold.  These averments constitute "factual allegation[s] . . . on which a jury could conclude that the water was contaminated."  It may be, as defendants argue, that "[t]here is no *evidence* that any of the plaintiffs have been exposed to p-CBSA or any other contaminant," *id*. (emphasis added), and that "there is no . . . *evidence* on which a jury could conclude that the water was contaminated."  *Id*. (emphasis added).  Plaintiffs, however, are not

required to produce evidence to withstand a motion for judgment on the pleadings. Plaintiffs have alleged that they are exposed to drinking water contaminated with a dangerous chemical, and that is sufficient to state a claim for relief. Whether plaintiffs have raised a genuine issue of material fact with respect to this claim is discussed below. Accordingly, the Court should deny defendants' motion for judgment on the pleadings with respect to this claim.

### i. Access to Personal Files (Claim I(C)(3))

Plaintiffs also allege that defendants have violated their Eighth Amendment rights by allowing unauthorized access to prisoner personal files. Plaintiffs allege:

> 57. Prisoners' files are presently kept unlocked, permitting unauthorized persons to gain access to them. There is personal and confidential prisoner and family information kept in the presentence information report (PSI).

> 58. The MDOC does not authorize officers to access the PSI or prisoner's files. This is because it can and does cause civil unrest and fights.

Amended Compl., ¶¶ 57-58. The Court should conclude that these allegations fail to state a claim upon which relief may be granted.

"[T]he Constitution does not encompass a general right to nondisclosure of private information." *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir.1994) (internal quotation omitted). Plaintiffs' vague allegations that access to personal information can cause civil unrest and fights are insufficient to establish that defendants were deliberately indifferent to inmate safety. The Amended Complaint contains no allegations that unauthorized access in fact led to any specific incidences of violence in the prison. Further, plaintiffs have not alleged that these supervisory defendants were personally involved in leaving the personal files unlocked. Plaintiffs themselves indicate that the MDOC prohibits unauthorized access, and there is no allegation that these defendants were in any way responsible for securing the personal information. This is not the type of systemic conditions

27

claim, such as plaintiffs' medical claim, for which personal responsibility may be imputed to the supervisory defendants. Accordingly, the Court should grant defendants' motion to dismiss this claim.

   3.   *Access to Courts Claims (Count II)*

Defendants next seek dismissal of plaintiffs' access to courts claims. In these claims, plaintiffs allege that (1) the law library is too small and prisoners are therefore denied adequate law library time, *see* Amended Compl., ¶¶ 59-61; (2) the law library has limited books, and does not include necessary books such as older volumes of the United States Reports and Michigan Supreme Court Reports, *see id.* at ¶¶ 62-64; and (3) prison officials have confiscated Uniform Commercial Code information pursuant to a memorandum issued by defendant Caruso. The Court should conclude that these claims fail to state a claim upon which relief may be granted.

   *a.   Legal Standard*

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v.*

28

*Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. In other words, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999) (en banc). Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

> As the Supreme Court has explained, to establish an access to courts claim,
>
> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

### b. Analysis

Here, plaintiffs have failed to allege any specific, litigation-related detriment resulting from the allegedly inadequate law library, nor have they identified "a nonfrivolous, arguable, underlying claim," *Christopher*, 536 U.S. at 415, lost by the allegedly inadequate law library. Plaintiffs only allegation regarding injury is a general one that the inadequate facilities "has prejudiced many

29

prisoners because they missed their deadlines and lost their cases." Amended Compl., ¶ 60. This generic allegation does not allege any specific, litigation related harm to a nonfrivolous challenge to any prisoner's conviction or conditions of confinement, and is inadequate to state a claim under *Lewis*. Further, plaintiffs' allegation that "[e]ach prisoner has a constitutional right to 3 two hour slots per week," Amended Compl., ¶ 61, and their suggestion that the law library is required to stock particular case reporters, is without merit under *Lewis*. The *Lewis* Court explicitly noted that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. And the Court explicitly declined to adopt any exception to the actual injury requirement for claims alleging systemic law library inadequacies. *See id.* at 353 n.4. Accordingly, plaintiffs' complaint fails to state a claim of denial of access to courts.[8]

---

[8]Attempting to overcome this conclusion, plaintiffs point to matters outside the record suggesting that two of them did suffer a specific, litigation related harm. As noted above, these matters outside the pleadings are not properly before the Court on defendants' motion for judgment on the pleadings, and cannot cure the Amended Complaint's failure to state a claim. Even if the Court considered this evidence under a summary judgment standard, however, defendants would still be entitled to judgment in their favor. Plaintiffs point to their responses to defendants' Interrogatory No. 14, which asked each plaintiff: "List every lawsuit and legal proceeding in which you missed a deadline, lost your case, or were otherwise injured due to inadequate library time at the Mid-Michigan Correctional Facility and describe the injury." *See, e.g.*, Pl.'s Br., Ex. 13. Plaintiff Lake responded simply: "Once while appealing/fighting a ticket." *Id.* This single statement does not describe a specific, litigation related harm, and in any event a challenge to a ticket is not a claim relating to the validity of the conviction or conditions of confinement which the right of access to courts protects. *See Blanton v. Caruso*, No. 1:10-cv-1187, 2011 WL 202094, at *5-*7 (W.D. Mich. Jan. 19, 2011). Plaintiff Evans responded that he missed a Michigan Supreme Court deadline for filing his habeas corpus petition, and that a suit for false imprisonment was delayed. *See* Pl.'s Br., Ex. 10. Yet in his deposition plaintiff Evans responded, "I don't know," when asked how his habeas case was affected by inadequate law library time or whether he ever missed any deadlines or lost a case as a result of inadequate law library time. *See id.*, Ex. 11, at 40. Further, these two instances, even if sufficient to establish an access to courts claim with respect to these plaintiffs, are insufficient to establish a systemic failure or justify system-wide relief. *See Lewis*, 518 U.S. at 358-60.

Nor does defendants' alleged confiscation of plaintiff's UCC materials state a claim for denial of access to courts.  As noted above the right of access to courts is limited to the pursuant of direct appeals from a criminal conviction, habeas corpus petitions, and civil rights suits regarding conditions of confinement.  *See Lewis*, 518 U.S. at 355.  Any claim based on the UCC is not one of these types of actions.  "There is nothing in the Uniform Commercial Code which would help plaintiff[s] challenge the legality of [their] conviction[s] or the conditions of [their] confinement.  Accordingly, plaintiff[s] [are] unable to state a valid access to courts claim." *Osborne v. Hill*, No. 05-CV-641, 2006 WL 1215084, at *5 (D. Ore. May 1, 2006); *see also*, *Smith v. Catinella*, No. 08-14118, 2009 WL 4639112, at *9 (E.D. Mich. Dec. 1, 2009) (Lawson, J., adopting Report of Morgan, M.J.); *Friske v. Scutt*, No. 07-CV-13747, 2009 WL 454654, at *8 (E.D. Mich. Feb. 24, 2009) (Rosen, J.); *Tomzek v. Blatter*, No. 1:08-cv-635, 2008 WL 4738942, at * 5 (W.D. Mich. Oct. 24, 2008); *Frazier v. Diguglielmo*, 640 F. Supp. 2d 593, 599 (E.D. Pa. 2008).  And even if plaintiffs attempted to use the UCC to challenge their convictions or conditions of confinement, such claims would be frivolous.  As noted above, it is plaintiffs' burden to establish the nonfrivolous nature of their underlying claims.  *See Christopher*, 536 U.S. at 415.  The courts have repeatedly held that the UCC has no bearing on the validity of a prisoner's conviction or subsequent incarceration.  *See, e.g.*, *United States v. Holloway*, 11 Fed. Appx. 398, 400 (6th Cir. 2001); *United States v. Reed*, No. 4:09-CR-076, 2010 WL 99128, at *4 (D.N.D. Jan. 5, 2010); *Chandler v. Curtis*, No. 05-CV-72608-DT, 2005 WL 1640083, at *2 (E.D. Mich. July 13, 2005) (Cohn, J.).  Indeed, the federal courts have repeatedly characterized such claims as frivolous.  *See, e.g.*, *Noble v. Pearson*, No. 5:09-cv-123, 2009 WL 4728698, at *4 (S.D. Miss. Dec. 3, 2009); *Kestner v. Lafler*, No. 1:08-cv-877, 2009 WL 3754393, at *1 (W.D. Mich. Nov. 5, 2009); *Diaz v. Diaz*, No. 7:09-cv-00017, 2009 WL 272870, at *1 (W.D. Va. Feb. 3, 2009); *Smith v. Burt*, No. 08-CV-14239, 2008 WL 4791348, at *2 (E.D. Mich. Oct. 24, 2008) (Cohn, J.); *Bartz v.*

31

*Van De Graaf*, No. 1:07-cv-219, 2008 WL 2704882, at *2 (D. Vt. July 8, 2008); *Hamby-Bey v. Bergh*, No. 08-CV-13284, 2008 WL 3286227, at *2 (E.D. Mich. Aug. 7, 2008) (Battani, J.). Thus, even if plaintiffs were attempting to use UCC materials in an action in the class of court cases protected by the access-to-courts right under *Lewis*, plaintiffs cannot show that they were hindered in their ability to pursue a *nonfrivolous* action. Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to plaintiffs' access to courts claims.

4.    *Property Deprivation/Due Process Claims (Count III)*

Finally, defendants seek judgment on the pleadings with respect to plaintiffs' claims that they were deprived of property without due process of law, asserted in Count III of the Amended Complaint. In this Count, plaintiffs allege that: (1) a class member had his guitar seized without a proper hearing; (2) prisoners are not given a hearing when funds are removed from their accounts; and (3) the prison is removing more money than required by statute or court order. *See* Amended Compl., ¶¶ 67-73. The Court should conclude that defendants are entitled to judgment on the pleadings with respect to these claims.

First, although defendants have clearly moved for judgment on the pleadings with respect to the claims asserted in Count III, *see* Def.s' Mot., at 1; Br. in Supp. of Def.s' Mot., at 13-17, plaintiffs do not address this claim, or this aspect of defendants' motion, in their response brief. "It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Because plaintiffs "failed to respond to [defendants] argument or otherwise address this claim, the Court [may] deem it abandoned." *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998); *see also, Colon*

32

*ex rel. Disen-Colon v. Colonial Intermediate Unit 20*, 443 F. Supp. 2d 659, 677 (M.D. Pa. 2006).

Second, plaintiffs' claim fails on the merits. The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981). It protects against only those deprivations of life, liberty, or property that are "without due process of law." *Id.* Accordingly, the Supreme Court has recognized that the negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong. *See id*. at 537, *overruled in part by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence does not amount to a "deprivation" at all, thus the Due Process Clause is not implicated). Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate. *See Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

Here, plaintiffs have made no allegation that Michigan does not have an adequate post-deprivation remedy to address their alleged property loss. Michigan's grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials. An inmate may file a written grievance; if its resolution is unsatisfactory to plaintiff, he may then seek sequential evaluation of its disposition by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman. Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decision in the state courts. *See De Walt v. Warden, Marquette Prison*, 315 N.W.2d 584, 585 (Mich. Ct. App. 1982); MICH. COMP. LAWS §§

33

791.251 *et seq.*  Finally, a state tort remedy is available.  These remedies have been held to be adequate under federal due process standards. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989).  In short, plaintiffs have "not shown that no adequate postdeprivation state remedy was available," and therefore they have not alleged a violation of their procedural due process rights so as to enable them to state a § 1983 claim. *See Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987).  Accordingly, the Court should grant defendants' motion for judgment on the pleadings with respect to this claim.

D.    *Defendants' Motion for Summary Judgment*

In a separate motion, defendants seek summary judgment with respect to plaintiffs' Eighth Amendment claims alleging dangerous noise levels (Claim I(A)(2)), poor ventilation (¶¶ 42-44 of Claim I(B)(1)), crammed living space (Claim I(B)(2)), lack of fire suppression system (Claim I(C)(1)), and overcrowding (Claim I(C)(2)).

1.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

34

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.    *Analysis*

        *a.  Dangerous Noise Levels (Claim I(A)(2))*

In their complaint, plaintiffs allege that they are subjected to dangerous noise levels.

35

Specifically, they allege:

30.     There is an Air Raid Siren placed on top of Housing Unit-F. This siren sounds
        off for twenty minutes or longer at least once a month. This has caused
        hearing damage to the Plaintiffs and the putative class members.

31.     There are two Bull Horns located in each of the housing units in the sleeping
        area. They must reach Prisoners under it and located 50 ft. away in cubicles.

Amended Compl., ¶¶ 30-31. Defendants argue that they are entitled to summary judgment on this

claim because plaintiffs have failed to produce any objective medical evidence showing any hearing

impairment, or to show that defendants were aware of any danger of hearing loss. Defendants further

argue that plaintiffs have failed to produce any evidence quantifying the noise level from which a jury

could find that the noise levels presented an unacceptable risk of hearing loss. The Court should

agree.

There is no doubt that "[e]xcessive noice in a prison can state a valid Eighth Amendment

claim." *Green v. Strack*, No. 94-17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995). To do so,

however, the noise must be so excessive and pervasive as to pose a serious risk of injury, *see Lunsford*

*v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994), or pain, *see Williams v. Boles*, 841 F.2d 181, 183 (7th

Cir. 1988), or sleep deprivation, *see Caldwell v. District of Columbia*, 201 F. Supp. 2d 27, 35 (D.D.C.

2001). On the other hand, "subjecting a prisoner to a few hours of periodic loud noises that merely

annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."

*Lunsford*, 17 F.3d at 1580. As one court has observed, the cases finding an Eighth Amendment

violation based on excessive noise have all "involved incessant noise throughout the day and night,

which at times was significantly beyond acceptable decibel levels and could have resulted in possible

hearing loss." *Sterling v. Smith*, No. CV606-103, 2007 WL 781274, at *3 (S.D. Ga. Mar. 08, 2007)

(discussing *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996); *Antonelli v. Sheehan*, 81 F.3d 1422,

36

1433 (7th Cir. 1996); *Toussain v. McCarthy*, 597 F. Supp. 1388, 1410 (N.D. Cal. 1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)).

Here, plaintiffs have failed to present any evidence regarding the severity or pervasiveness of the noise. They allege only that the air raid siren on Unit F sounds off for twenty minutes at least once a month. They provide no evidence for the decibel level of the siren or bull horns, nor any evidence regarding the frequency with which they are sounded.[9] Nor have they presented any evidence that the noise levels created a risk of hearing impairment, pain, or loss of sleep. In the absence of any evidence regarding the severity, frequency, and duration of the allegedly excessive noise, defendants are entitled to summary judgment. *See Lucien v. Gramley*, No. 94-3725, 1996 WL 590539, at *2-*3 (7th Cir. Oct. 10, 1996); *Green*, 1995 WL 341544, at *1.

#### b. Poor Ventilation (¶¶ 42-44 of Claim I(B)(1))

Plaintiffs allege that the ventilation at MMC is inadequate. Specifically, they allege that:

42.    The ventilation at the MMC has not worked in F-Unit for months. Ventilation in other units only works half the time. The exhaust system in H-Unit runs for one hour and shuts off for one hour, back and forth throughout the day. Each Unit has a high and low side system. These systems are supposed to cycle back and forth so that the ventilation is constantly working.

43.    The Filtering System is very poor and is not properly maintained by Professional Personnel. The air is very stale and constantly reeks of cigarette smoke, which causes headaches and sickness. There are only two fresh air handlers (Air Intakes) for up to 140 prisoners. These bring in air from the Attic which has Black Mold in it, in violation of State Code and the Fresh Air Act, MCL 333.12602.

Amended Compl., ¶¶ 42-43. Defendants seek summary judgment on this claim, arguing that

---

[9]In their brief, plaintiffs cite to only one item of evidence supporting their excessive noise claim, page 33 of the deposition transcript of plaintiff Hoffman. *See* Pl.'s Br., at 11. The portion of plaintiff Hoffman's deposition attached to the response, however, does not include page 33, and none of the included pages address the noise level in the prison. *See id*, Ex. 14.

plaintiffs' allegations of headaches and sickness constitutes a *de minimis* injury, and that plaintiffs'

allegations regarding the functioning of the ventilation system is unsupported by the evidence.  In

support of this argument, defendants point to their response to plaintiffs' Interrogatory No. 13, which

states:

> Each housing unit has two exhaust systems that produce 1950 cubic feet per
> minute (cfm) each, six exhaust vents 24" x 24" in the ceiling of each unit that allows
> 650 cfm each to be vented out of the unit.  Each housing unit has four exterior wall
> ventilators that blend fresh air from the outside with the interior air to reach the
> temperature set on the thermostat in the units, during the heating season.  These
> systems were installed at the time of construction in 1989.  These systems are
> maintained semi-annually.  No known defects or deficiencies were noted at the time
> of the request.

Def.s' Br., Ex. 1, at 5.  Defendants also attached to their interrogatory response copies of completed

preventative maintenance work orders, reflecting invoiced work for preventative maintenance on a

roughly semi-annual basis from July 2006 through August 2008.  *See id*. at 10-22.  Plaintiffs'

principal rejoinder is to focus on their claims that the prison is inadequately heated, and argue that this

should be considered in conjunction with their inadequate ventilation claims.  However, as explained

above plaintiffs' amended complaint fails to state a claim of inadequate heating.  With respect to the

ventilation issues specifically, plaintiffs point only to the affidavit of plaintiff Lake, who avers that

"[i]n the unit the air is very stale.  There is much cigarette smoke in the air[.]" Pl.s' Br., Ex. 1, at 4.[10]

The Court should conclude that this evidence is insufficient to withstand summary judgment.

"Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the

health of inmates and the sanitation of the penitentiary." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir.

1996) (internal quotation omitted).  Plaintiffs, however, have failed to provide any evidence that the

---

[10]Plaintiffs also cite to the deposition transcripts of plaintiffs Hoffman and Evans.  However,
the testimony cited to discusses only the alleged inadequate heating; neither plaintiff testified with
respect to inadequate ventilation.  *See* Pl.'s Br., Ex. 11, at 34; Ex. 14, at 18.

ventilation in the prison is inadequate, or that the ventilation system undermines the health and safety of the inmates. "The Eighth Amendment does not guarantee a certain type of ventilation system or a certain rate of air exchange." *Bolton v. Goord*, 992 F. Supp. 604, 628 (S.D.N.Y. 1998). Defendants have provided an explanation of the ventilation system, as well as maintenance records showing that it was regularly maintained. In response, plaintiffs have "offered only [the] conclusory allegation[] [of plaintiff Lake], without backing from medical or scientific sources, that the rank air exposed him to diseases and caused respiratory problems which he would not otherwise have suffered. Such conditions do not fall below 'the minimal civilized measure of life's necessities.'" *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. at 834); *see also*, *King v. Berghuis*, No. 1:10-cv-57, 2010 WL 565373, at *4 (W.D. Mich. Feb. 13, 2010) (plaintiffs' allegations that inadequate ventilation system "cause[d] them discomfort in the form of headaches, sinus problems and nose bleeds" did not allege sufficiently severe deprivation to state conditions of confinement claim). Plaintiff Lake's averment that the air was stale is insufficient to raise a genuine issue of material fact that the ventilation was inadequate. *See Vasquez v. Frank*, No. 05-C-528-C, 2007 WL 3254702, at *7 (W.D. Wis. Nov. 02, 2007) ("Plaintiff refutes the adequacy of the ventilation, relying on the way it felt to him and other prisoners. Again, although plaintiff can testify to how he felt, he is not qualified to give an opinion of the actual quality of the ventilation. Without any basis for finding that the air quality was so poor as to constitute a risk to plaintiff's health, I cannot find a genuine issue of material fact regarding the adequacy of the ventilation."), *aff'd*, 290 Fed. Appx. 927, 930 (7th Cir. 2008); *Malone v. Becher*, NA 01-101-C H/H, 2003 WL 22080737, at *15 (S.D. Ind. Aug. 29, 2003) ("With respect to the issue of ventilation, at most, plaintiffs have alleged that at times the air was 'stale,' 'nasty,' or 'funky.' Plaintiffs have not offered any admissible evidence of a serious ventilation problem, let alone one that had risen to the level of a constitutional

violation."). Further, plaintiffs cannot establish that defendants were deliberately indifferent under the subjective prong of the *Farmer* test, in light of the evidence establishing regular maintenance of the ventilation system. *See Vasquez*, 290 Fed. Appx. at 930 (no deliberate indifference shown where prison officials believed ventilation system was adequate). Accordingly, the Court should grant defendants' motion for summary judgment with respect to this claim.

### c. Living Space/Overcrowding (Claims I(B)(2) and I(C)(2))

Plaintiffs allege that crammed living conditions and overcrowding have resulted in a denial of their Eighth Amendment rights. Specifically, plaintiffs allege that inmates are housed four inmates in a 6' x 7' area, giving each prisoner approximately 10 square feet of living space. *See* Amended Compl., ¶ 20. They also allege that the prison has only two officers per every 140 inmates. *See id*., ¶ 21. Plaintiffs allege that the space available for each prisoner is below the standard 60 square feet of living space set by the American Correctional Association, *see id*. at 45, and that the crowding has "caused many fights, thefts, and arguments." *Id*., ¶ 46. Plaintiffs further allege that "[m]ost of the activities at the MMC are taxed over their maximum capacities. This includes the yard, chow hall, and school." *Id*., ¶ 56. The Court should conclude that defendants are entitled to summary judgment on these claims.

"Overcrowding *per se* is not unconstitutional; what must be tested against constitutional standards are the basic living conditions in a jail." *Fischer v. Winter*, 564 F. Supp. 281, 298 (N.D. Cal. 1983); *see also*, *Simpson v. Horn*, 25 F. Supp. 2d 563, 571 (E.D. Pa. 1998). Overcrowding violates the Eighth Amendment only when it "leads] to deprivations of essential food, medical care, or sanitation" or "increasers] violence among inmates or create other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *see also*, *Simpson*, 25 F. Supp. 2d at 571. It is not enough for a court to conclude "*in the abstract* that prison overcrowding and double

Helling . . . generally results in serious harm to the inmates. . . .  A court is under the obligation to examine the actual effect of challenged conditions upon the well-being of the prisoners."  *Id.* at 367 (Brennan, J., concurring).

To the extent plaintiffs' claims are based on the amount of living space they are afforded, the claim is without merit.  Contrary to plaintiffs' allegations, defendants have presented evidence that each inmate has more than 10 square feet of living space.  In response to plaintiffs' Interrogatory No. 14, defendants state that each cubicle is 249.48 square feet, and houses either 7 or 8 prisoners.  This amounts to 35.64 or 31.185 square feet of living space per prisoner, in line with the 31.5 square feet afforded the prisoners in *Rhodes*, *see Rhodes*, 452 U.S. at 343.  The *Rhodes* Court found that this did not amount to an Eighth Amendment violation.  Nor have plaintiffs presented any evidence that the crowding at MMC has lead to deprivations of essential food, medical care, and sanitation, or lead to increased violence among inmates.  Plaintiffs assert that "forcing seven inmates to occupy a space constructed to house four has increased the number of fights and near fights in STF."  Pl.s' Br., at 14. The only evidence they cite in support of this claim, however, is their own generalized averments that "[t]he overcrowding has cause[d] more fights and arguments in the unit and/or the yard."  *Id.*, Ex. 1, at 4 (Lake affidavit); *see also*, *id.*, Ex. 3, at 4 (Boone affidavit) ("The living space is very confined. Fights, arguments, etc., break out due to this cramping issue.").  They cite to no evidence, however, of a causal connection between the crowded conditions and the incidents of violence.  They do not present, for instance, any evidence regarding the frequency of fights over time as the occupancy of the prison has increased.  "In order to overcome a motion for summary judgment, plaintiff must present evidence that violence within the jail increased at a rate disproportionate to the population as a result of overcrowding.  Plaintiff[s] merely claims that there was an increase in fighting and disagreements when the cells were crowded."  *Ramirez v. City and County of San Francisco*, No. C

41

89-4528, 1997 WL 33013, at *5 (N.D. Cal. Jan. 23, 1997) (citing *Rhodes*, 452 U.S. at 343); *see also*, *Rhodes*, 452 U.S. at 343 (no Eighth Amendment violation where evidence showed only that violence increased in proportion to the prison population plaintiffs "failed to produce evidence that double Helling itself caused greater violence.").

Plaintiffs also contend that "the overcrowding has resulted in a denial of basic hygienic needs" because "23.3 inmates share a single shower, and 17.5 inmates share a single toilet." Pl.s' Br., at 14-15. Beside citing these numbers, however, plaintiffs present no evidence that shower and toilet facilities are insufficient to meet their basic hygienic needs. There is no evidence regarding the frequency with which inmates are able to shower, nor is there any allegation or evidence that the number of toilets causes sanitation or health problems. The mere fact that a number of prisoners are required to share shower and toilet facilities, without more, is insufficient to establish an Eighth Amendment violation. *See Austin v. Coughlin*, 668 F. Supp. 882, 830-31 (S.D.N.Y. 1987) (ratios as high as 28 inmates per shower and 13 inmates per toilet did not establish Eighth Amendment violation where there was no evidence that inmate hygiene was affected); *Miles v. Bell*, 621 F. Supp. 51, 58-62 (D. Conn. 1985) (fact that 14-24 inmates shared single shower head and 10-15 inmates share single toilet insufficient to establish Eighth Amendment violation where plaintiffs did "not challenge the sanitary conditions of the toilet and shower facilities, but only the number of toilets and showers. Plaintiffs cited no case law in support of their theory that the number of toilets and showers is constitutionally inadequate.").

Plaintiffs also assert that "the overcrowding has denied Plaintiffs the basic necessity of health," because they "were unable to secure prompt medical attention" and because the "overcrowded living conditions created a situation in which communicable illnesses" such as the flu and MRSA "were quickly and easily spread." Pl.s' Br., at 15. Again, however, plaintiffs have failed

to provide any evidence to support these assertions.  For instance, plaintiff Lake's affidavit avers various disputes with the treatment he received, and claims that he had to wait to see an outside specialist, *see* Pl.'s Br., Ex. 1, at 1, but it does not aver that he suffered any delay in seeing the facility medical staff, nor does it provide any evidence that the alleged inadequacies in his treatment resulted from the population level in the prison.  And plaintiffs have presented no evidence of any serious disease outbreaks, only plaintiff Hoffman's testimony that four people in his unit contracted MRSA.  This evidence is insufficient to create a genuine issue of material fact with respect to plaintiffs' overcrowding claim.  Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to these claims.

### d. Denial of Hygiene (Claim I(B)(3))

    Plaintiffs allege that they were denied proper hygiene in two ways.  First,  plaintiffs  allege that "[t]he MDOC has a policy that forbids hygiene for one year to an indigent prisoner who was terminated from school, work, or refused a job."  Amended Compl., ¶ 48.  Second, they allege that "[t]he MDOC has no provision to provide hygiene products if a prisoner's hygiene products are stolen or lost."  *Id.*, ¶ 49.  In moving for summary judgment with respect to this claim, defendants address only the second allegation, contending that they are entitled to summary judgment because they implemented a policy by which "care packages" were to be provided, and had no personal involvement in the distribution of such items or lack thereof.  With respect to the claim asserted in ¶ 49, the Court should agree that defendants are entitled to summary judgment.  In response to plaintiffs' Interrogatory No. 16, defendants indicated that in cases of theft or loss of personal hygiene items, Assistant Resident Unit Supervisors are provided care packages of hygiene products to distribute.  *See* Def.s' Br., Ex. 1, at 6.  Plaintiffs have presented no evidence to rebut this assertion.  Thus, the evidence shows that the defendant supervisory officials in fact promulgated a policy of

43

replacing lost and stolen hygiene products, and were therefore not deliberately indifferent.  The defendant supervisory officials cannot be held vicariously liable for any failures on the part of the Assistant Resident Unit Supervisors to properly distribute the care packages.

However, the Court should conclude that defendants' are not entitled to summary judgment with respect to the allegation in ¶ 48 that defendants instituted a policy of denying indigent status for the purchase of hygiene products to inmates terminated from school or work.  Such a policy, if it in fact exists, would be unconstitutional.  *See Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) ("A prisoner whose inability to purchase hygiene items results from his rejection of educational status satisfies the objective and subjective requirements of an Eighth Amendment violation when he alleges a complete deprivation and shows that the deprivation resulted from a deliberate indifference to hygiene needs.").  Plaintiff Evans testified that such a policy, either formal or informal, in fact existed, *see* Pl.s' Br., Ex. 11, at 58, and defendants have presented no evidence to the contrary.  Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to the hygiene claim asserted in ¶ 49, but are not entitled to summary judgment with respect to the hygiene claim asserted in ¶ 48.

### e.  Water Contamination (Claim I(B)(4))

Defendants next contend that they are entitled to summary judgment with respect to plaintiffs' water contamination claims.  The Court should agree.

The evidence in the record fails to raise a genuine issue of material fact with respect to whether the drinking water is, in fact, unsafe to drink, or with respect to whether the defendants were deliberately indifferent to plaintiffs' health and safety.  A 2005 Water Quality Report for St. Louis prepared by the United States Environmental Protection Agency (EPA) indicated that levels of arsenic, barium, fluoride, selenium, lead, and copper were all well below the EPA's Maximum

Containment Level for safe drinking water.  *See* Def.s' Br., Ex. B, at 14.  Although p-CBSA is unregulated and therefore does not have a Maximum Containment Level, testing indicated the presence of p-CBSA in the 21-180 parts per billion (ppb) range.  *See id.*  In a March 30, 2006, e-mail to prison officials, St. Louis City Manager Robert McConkie informed the MDOC that the EPA provided information to the city about toxicology studies indicating that p-CBSA is not a carcinogen, was not retained in the body because it is water soluble, and was not harmful when consumed at levels below 25,000 parts per billion (ppb).  Testing of the city's wells indicated p-CBSA levels of 21-180 ppb.  *See* Def.'s Br., Ex. 2, at 8.  The e-mail noted that the Michigan Department of Environmental Quality (MDEQ) suggested a lower threshold than the EPA, 7,300 ppb, but that the p-CBSA levels in the city's wells were still significantly below this threshold.  *See id.* at 9.  A 2007 Water Quality Report for St. Louis contains findings similar to the 2005 Report, with p-CBSA levels having decreased to 0-190 ppb in the wells tested.  *See id.* at 16.  The 2007 Report also indicates in a footnote that "USEPA toxicology studies have shown that p-CBSA is not teratogenic or carcinogenic in concentrations lower than 25,000 ppb."  *Id.*  The EPA's Five-Year Review Report prepared in September 2007, reflects similar findings.  *See* Pl.s' Br., Ex. 5, at 21.

Plaintiffs have presented no evidence to rebut these water quality reports.  They assert only that the long term effects of arsenic and p-CBSA are not fully known, and thus any level of contamination is unacceptable.  Even were this so, however, plaintiffs cannot show that defendants were deliberately indifferent under the subjective prong of the Eighth Amendment inquiry.  There is no evidence that defendants have acted in reckless disregard for the health and safety of the inmates.  On the contrary, defendants have reasonably relied on the information given them concerning the level of contamination of the city's wells and the non-harmful effects of those levels by the state and federal agencies possessing expertise in this area.  Plaintiffs simply cannot show that such reliance

amounts to deliberate indifference.  As the Seventh Circuit has aptly explained:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate. But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures. If the environmental authorities think there's no reason to do anything about a contaminant because its concentration is less than half the maximum in a proposed revision of the existing standards, prison officials cannot be faulted for not thinking it necessary for them to do anything either. They can defer to the superior expertise of those authorities.

*Carroll v. DeTella*, 255 F.3d 470, 472-73 (7th Cir. 2001) (citations omitted); *see also*, *Wright v. New York State Dep't of Correctional Servs.*, No. 06 Civ. 03400, 2008 WL 505660, at *12 (S.D.N.Y. Oct. 10, 2008) (reliance on statements from state health official regarding level of water contamination "was not even negligence, let alone deliberate indifference to contamination."), *magistrate judge's report adopted*, 2008 WL 5084193 (S.D.N.Y. Nov. 24, 2008), *aff'd*, 372 Fed. Appx. 175 (2d Cir. 2010); *Brown v. Williams*, 399 F. Supp. 2d 558, 566-67 (D. Del. 2005) (footnote and citations omitted) ("Even though State defendants knew of the inmates' concern about the water conditions, there is nothing to suggest that State defendants knew that the water posed serious health risks. To the contrary, maintenance at HRYCI, the City of Wilmington, and Delaware Health and Social Services all informed State defendants that the water was not contaminated. In light of these findings, and absence of evidence indicating otherwise, it cannot be said that State defendants had the requisite awareness for a finding of deliberate indifference.").  Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiffs' water contamination claims.

*f. Fire Safety (Claim I(C)(1))*

46

Finally, defendants seek summary judgment with respect to plaintiff's fire safety claim.  In

this claim, plaintiffs allege:

> 53.    None of the buildings at the MMC have automatic fire suppression systems,
> in violation of state and Federal law.

> 54.    All of the windows are now being blocked by bunk beds, which restrict the
> emergency exits and/or emergency entrances for rescue personnel.  This
> violates state building codes and can be a fire hazard.

> 55.    Many of the windows in the unit sleeping areas are not up to state and Federal
> codes.  State of Michigan building codes require the use of "Egress Windows",
> that are at least 4 ft. in width so that rescue personnel can enter in an
> emergency.  This is a level one prison, the last stop before returning home.

Amended Comp., ¶¶ 53-55.  The Court should conclude that defendants are entitled to summary

judgment with respect to these claims.

"The Eighth Amendment requires that prison officials provide adequate fire safety to inmates."

*Johnson v. Texas Bd. of Criminal Justice*, 281 Fed. Appx. 319, 321-22 (5th Cir.2008).  However,

"[w]hile fire and electrical codes can be helpful in determining whether a lack of fire safety can

constitute a violation of the Eighth Amendment, they are not determinative, and the Eighth

Amendment does not require that prisons meet fire and electrical codes."  *Id*. at 322.  "Unless

objective assessment of prison conditions compels the conclusion that inmates are being subjected

to unreasonable safety risks, the federal courts must avoid becoming enmeshed in the minutiae of

prison operations, and should decline to second-guess prison administrators in the operation of

correctional facilities." *Coniglio v. Thomas*, 657 F. Supp. 409, 414 (S.D.N.Y. 1987) (citing *Bell v.*

*Wolfish*, 441 U.S. 520, 562 (1979).  Here, plaintiffs have failed to present any evidence that fire safety

measures at the prisons are inadequate.  Although they allege that some windows may be blocked and

that the prison lacks an automatic sprinkler system, they present no evidence regarding these matters,

nor do they "address numerous factors affecting fire safety at the prison. [They] fail[] to [provide any

47

evidence] that the prison lacks a comprehensive fire safety plan or address other factors such as fire extinguishers; smoke detectors in the cell corridors, stairwells and elevator landings; the fire alarm system, evacuation plans, and fire drills; locking devices on cell doors; the prison's combustible load; fire walls; or smoke containment capabilities in the ventilation systems," all factors relevant to whether defendants were deliberately indifferent to the risk of harm to prisoners from fire. *Cable v. Wall*, No. 09-439, 2010 WL 1486494, at *5 (D.R.I. Mar. 18, 2010), *magistrate judge's report adopted*, 2010 WL 1531374 (D.R.I. Apr. 13, 2010).[11]  Defendants have presented evidence that each housing unit has four evacuation doors, smoke detectors in or just outside of each room or cubicle, and multiple fire alarms and fire extinguishers. *See* Def.s' Br., Ex. C, at 16-23.  The prisons also have detailed procedures for conducting fire evacuation drills. *See id*. at 12-15.  Plaintiffs have presented no evidence to suggest that these fire safety measures are inadequate, much less that they exhibit deliberate indifference to the safety of the inmates.

Moreover, plaintiff's have failed to raise a genuine issue of material fact regarding defendants' personal involvement.  The MDOC's regulations make clear that the Physical Plant Division is responsible for developing and implementing fire safety protocols, evaluating fire safety matters, and ensuring compliance with state fire codes.  *See* Def.s' Br., Ex. C, at 2-11, MDOC Policy Directive 04.03.120.  Thus, plaintiffs cannot show that defendants were personally involved in creating the allegedly inadequate fire safety conditions.  For these reasons, the Court should grant defendants' motion for summary judgment with respect to these claims.

3.    *Qualified Immunity*

---

[11]Plaintiffs' allegations that fire safety is inadequate because some windows may be blocked by bunk beds and because the windows are not properly sized egress windows border on absurd.  The windows of a *prison* are not supposed to allow a means of ingress or egress.  Plaintiffs do not allege or provide any evidence that the designated emergency exit doors are blocked.

48

Defendants also contend that they are entitled to summary judgment on the basis of qualified immunity.  As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806.  In determining whether an official is entitled to qualified immunity, a court asks "whether the violation involved a clearly established rights of which a reasonable official would have known" such that the official's conduct "was objectively unreasonable in light of the clearly established constitutional right." *Feathers v. Ahey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

If the Court accepts my above recommendations, only plaintiffs' medical care claims and the denial of hygiene claim asserted in ¶ 48 of the Amended complaint will survive dismissal or summary judgment on the merits.  With respect to those claims which are dismissed or for which summary judgment is granted, the conclusion that the claims fail on the merits makes it unnecessary to consider defendants' alternative argument that they are entitled to qualified immunity. *See Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 838 n.10 (6th Cir. 2009).  With respect to the claims which survive, defendants do not contest that the law was not clearly established; rather, they argue only that they are entitled to qualified immunity because the underlying claims are without merit. Because defendants assert that they are entitled to qualified immunity "only on the basis that plaintiff has failed to state federal constitutional claim" and "they do not allege that the rights alleged to have been violated were not clearly established[,] . . . the Court need not separately address defendants[']

49

qualified immunity argument." *Otrusina v. Crysler*, No. 2:09-CV-12828, 2010 WL 3702647, at *9 (E.D. Mich. Aug. 29, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 3702646 (E.D. Mich. Sept. 16, 2010) (Cohn, J.).

    4.    *Injunctive Relief*

Finally, defendants argue that plaintiffs' claims for injunctive relief are moot because none of the remaining plaintiffs is still incarcerated in the St. Louis prisons. The Court should decline to dismiss plaintiffs' requests for injunctive relief at this time. It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Nevertheless, plaintiffs' Amended Complaint raises class allegations, and the Court has yet to consider whether a class action is appropriate in this case now that plaintiffs are represented by counsel. Should the Court ultimately determine that a class action including current residents of the prisons is appropriate, plaintiffs' request for injunctive relief will not be moot. If no class is certified, plaintiffs' request for injunctive relief can be dismissed as moot at that time.

E.    *Conclusion*

In view of the foregoing, the Court should: (1) grant defendants' motion to dismiss the unrepresented plaintiffs (docket #226); (2) grant in part and deny in part defendants' motion for partial judgment on the pleadings (docket #230); and (3) grant in part and deny in part defendants' motion for partial summary judgment (docket #231). Specifically, the Court should:

    (1) dismiss for failure to prosecute the claims of plaintiffs Rouse, Fritts, Pellin, Gates, George, Ashley, McMurray, and DeForest pursuant to Rule 41(b);

(2) dismiss plaintiffs' claims alleging denial of bathroom use (Claim I(A)(3), ¶¶ 32-33), disease outbreaks (Claim I(A)(4), ¶¶ 34-39), exposure in medline (Claim I(A)(5), ¶ 40), cold cubicles (¶ 41 of Claim I(B)(1)), denial of access to courts (Claim II, ¶¶ 59-66), and removal of property (Claim III, ¶¶ 67-73);

(3) deny defendants' motion for judgment on the pleadings with respect to plaintiffs' claims alleging denial of medical care (Claim I(A)(1), ¶¶ 27-29), denial of hygiene (Claim I(B)(3), ¶¶ 48-49), and contaminated drinking water (Claim I(B)(4), ¶¶ 50-52);

(4) grant defendants' motion for summary judgment with respect to plaintiffs' claims alleging dangerous noise levels (Claim I(A)(2), ¶¶ 30-31), poor ventilation (¶¶ 42-44 of Claim I(B)(1)), crammed living space and overcrowding (Claims I(B)(2) and I(C)(2), ¶¶ 45-47, 56), denial of hygiene by failure to replace lost or stolen hygiene products (¶ 49 of Claim I(B)(3)), contaminated drinking water (Claim I(B)(4), ¶¶ 50-52), and lack of fire suppression system (Claim I(C)(1), ¶¶ 53-55); and

(5) deny defendants' motion for summary judgment with respect to plaintiffs' claim alleging denial of hygiene products by virtue of a prison policy forbidding indigent status to prisoners who have their work or schooling terminated (¶ 48 of (Claim I(B)(3)) and with respect to plaintiffs' claims for injunctive relief.

If the Court accepts this recommendation, the claims remaining in the case will be plaintiffs' denial of medical care claims asserted in ¶¶ 27-29 of the Amended Complaint and the denial of hygiene claim asserted in ¶ 48.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of

any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health &*
*Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).
Filing of objections which raise some issues but fail to raise others with specificity, will not preserve
all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of*
*Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers*
*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any
objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing
party may file a response. The response shall be not more than five (5) pages in length unless by
motion and order such page limit is extended by the Court. The response shall address specifically,
and in the same order raised, each issue contained within the objections.


                                             s/Paul J. Komives
                                             PAUL J. KOMIVES
                                             UNITED STATES MAGISTRATE JUDGE

Dated: 2/18/11


> The undersigned certifies that a copy of the foregoing
> order was served on the attorneys of record and  by
> electronic means or U.S. Mail on February 18, 2011.
>
>                         s/Eddrey Butts
>                         Case Manager

52