UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE, CLAUDE HOFFMAN, GUY CURTIS, MICHAEL KANIPE, DOUGLAS WARNER, CARLTON RIDER, DANNY FRITTS, RICHARD BOONE II, TONY PELLIN, MARK ASHLEY, TERRY GEORGE, WILLIAM TAYLOR, LOREN WICKER, MICHAEL LAKE, STEWART GATES, ROBERT McMURRAY, ERICK DeFOREST, ANTONIO MANNING, HILTON EVANS, JOHN DOE, ONE through SEVEN, on behalf of themselves and all other similarly situated individuals,

            Plaintiffs,

  v.

MDOC DIRECTOR PATRICIA CARUSO, WARDEN BLAINE LAFLER, AND DEPUTY WARDEN BARBARA MEAGHER, THEIR SUPERIORS, SUBORDINATES, SUB-CONTRACTORS, CONTRACTORS, REPLACEMENTS, PREDECESSORS, AND JOHN/JANE DOE, EIGHT through FOURTEEN, in their individual and official capacity,

            Defendants.

            CASE NO. 2:06-CV-10961
            JUDGE STEPHEN J. MURPHY, III
            MAGISTRATE JUDGE PAUL KOMIVES

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION (docket #249 and #250)**

I.    RECOMMENDATION: The Court should deny plaintiffs' motion and amended motion for class certification.

II.    REPORT:

A.    *Procedural Background*

1

Plaintiffs, nineteen current and former inmates of the St. Louis and Mid-Michigan Correctional Facilities in St. Louis, Michigan, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on March 3, 2006. Plaintiffs bring claims, on behalf of themselves and a purported class of all prisoners at the St. Louis and Mid-Michigan Correctional Facilities, against the defendant prison officials relating to the conditions of confinement at the facilities. Plaintiffs' complaint is divided into five claims for relief: (1) an Eighth Amendment claim based on denial of medical care and medication, dangerous noise levels, denial of restroom use, serious disease outbreaks, and prisoners being forced to wait in the cold to receive medications; (2) an Eighth Amendment claim based on cold cubicles and poor ventilation, cramped living space, denial of hygiene, and contaminated drinking water; (3) an Eighth Amendment claim based on the lack of a proper fire suppression system, overcrowded conditions, and prisoner access to inmates' files; (4) a First Amendment access to courts claim based on inadequate law library time and inadequate law library resources; and (5) a Fourteenth Amendment due process claim based on removal of property without a proper hearing and removal of funds from prisoner accounts without hearing and in excess of that authorized by law.

Five plaintiffs were subsequently dismissed from the action, and *pro bono* counsel was appointed to represent the remaining 14 plaintiffs. On October 21, 2008, counsel filed an amended complaint. In the amended complaint plaintiffs, now consisting solely of current or former inmates of STF, assert three counts, broken down into numerous subparts, some of which are further broken down into sub-subparts, as illustrated in the following chart:

| Count | Claim | Subpart | Sub-Subpart | Amend. Compl. |
|---|---|---|---|---|
| I | Eighth Amendment Violations | (A) Cruel & Unusual Punishment | (1) Denial of Medical Care | ¶¶ 27-29 |
| | | | (2) Dangerous Noise Levels | ¶¶ 30-31 |
| | | | (3) Denial of Bathroom Use | ¶¶ 32-33 |
| | | | (4) Disease Outbreaks | ¶¶ 34-39 |
| | | | (5) Medline Prisoners Forced into Cold | ¶ 40 |
| | | (B) Inhumane Treatment | (1) Cold Cubicles and Poor Ventilation | ¶¶ 41-44 |
| | | | (2) Crammed Living Space | ¶¶ 45-47 |
| | | | (3) Denial of Hygiene | ¶¶ 48-49 |
| | | | (4) Contaminated Drinking Water | ¶¶ 50-52 |
| | | (C) Unsafe Living Conditions | (1) Lack of Fire Suppression System | ¶¶ 53-55 |
| | | | (2) Overcrowding | ¶¶ 56 |
| | | | (3) Access to Prisoner's Personal Files | ¶¶ 57-58 |
| II | First, Fifth, and Fourteenth Amendment Access to Courts Violations | (A) Inadequate Law Library Time | | ¶¶ 59-61 |
| | | (B) Limited Law Books | | ¶¶ 62-64 |
| | | (C) Seizure of Property and Legal Materials | | ¶¶ 65-66 |
| III | 14th Amendment Due Process Violations | Removal of Property or Money without a Hearing | | ¶¶ 67-73 |

The named defendants are Patricia Caruso, Director of the Michigan Department of Corrections (MDOC); Blaine Lafler, the Warden at STF during the relevant time period; and Barbara Meagher,

a Deputy Warden at STF during the relevant time period. The complaint also names as defendants unknown employees of Correctional Medical Services, Inc., and unknown MDOC employees in the Bureau of Health Care Services. Plaintiffs seek $10,000,000.00 in compensatory damages, as well as declaratory and injunctive relief.[1]

On March 23, 2010, counsel sought to withdraw with respect to eight of the remaining fourteen plaintiffs, based on their inability to contact these plaintiffs and these plaintiffs' failure to appear for their depositions or provide requested discovery. I granted counsel's motion to withdraw on April 30, 2010. The remaining plaintiffs represented by counsel are Claude Hoffman, Michael Kanipe, Richard Boone, William Taylor, Michael Lake, and Hilton Evans. The remaining plaintiffs who are no longer represented by counsel are Arthur Rouse, Danny Fritts, Tony Pellin, Stewart Gates, Terry George, Mark Ashley, Robert McMurray, and Eric DeForest. On February 18, 2011, I filed a Report addressing various dispositive motions filed by defendants. In that Report, I recommended that the Court: (1) dismiss for failure to prosecute the claims of plaintiffs Rouse, Fritts, Pellin, Gates, George, Ashley, McMurray, and DeForest pursuant to Rule 41(b); (2) dismiss plaintiffs' claims alleging denial of bathroom use (Claim I(A)(3), ¶¶ 32-33), disease outbreaks (Claim I(A)(4), ¶¶ 34-39), exposure in medline (Claim I(A)(5), ¶ 40), cold cubicles (¶ 41 of Claim I(B)(1)), denial of access to courts (Claim II, ¶¶ 59-66), and removal of property (Claim III, ¶¶ 67-73); (3) deny defendants' motion for judgment on the pleadings with respect to plaintiffs' claims alleging denial of medical care (Claim I(A)(1), ¶¶ 27-29), denial of hygiene (Claim I(B)(3), ¶¶ 48-49), and contaminated drinking water (Claim I(B)(4), ¶¶ 50-52); (4) grant defendants' motion for

---

[1]For ease of reference, I will refer to the claims raised by plaintiffs using the letters and numbers provided in the foregoing chart. Thus, plaintiffs' denial of medical care claim will be referred to as Claim I(A)(1), and so on.

summary judgment with respect to plaintiffs' claims alleging dangerous noise levels (Claim I(A)(2), ¶¶ 30-31), poor ventilation (¶¶ 42-44 of Claim I(B)(1)), crammed living space and overcrowding (Claims I(B)(2) and I(C)(2), ¶¶ 45-47, 56), denial of hygiene by failure to replace lost or stolen hygiene products (¶ 49 of Claim I(B)(3)), contaminated drinking water (Claim I(B)(4), ¶¶ 50-52), and lack of fire suppression system (Claim I(C)(1), ¶¶ 53-55); and (5) deny defendants' motion for summary judgment with respect to plaintiffs' claim alleging denial of hygiene products by virtue of a prison policy forbidding indigent status to prisoners who have their work or schooling terminated (¶ 48 of (Claim I(B)(3)) and with respect to plaintiffs' claims for injunctive relief. On March 14, 2011, the Court entered an Order adopting my Report and Recommendation. As a result of the Court's Order, the only remaining claims are the denial of medical care claims asserted in ¶¶ 27-29 of the Amended Complaint and the denial of hygiene claim asserted in ¶ 48, with respect to plaintiffs Hoffman, Kanipe, Boone, Taylor, Lake, and Evans.

The matter is currently before the Court on plaintiffs' motion and amended motion for class certification, both filed on August 14, 2012.[2] Pursuant to FED. R. CIV. P. 23(b)(2), plaintiffs seek to certify a class consisting of:

> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after February 14, 2005, whose healthcare and general living conditions were and are subject to the polices and practices of the Michigan Department of Corrections.

Plaintiff's also seek to certify two subclasses consisting of:

> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after February 14, 2005, whose healthcare was

---

[2]The amended motion was filed because the original motion failed to include a certification that counsel had conferred with the opposing parties in an attempt to resolve the matter. In all other respects, the motions are identical. All references to plaintiffs' motion that follow are to the amended motion.

> and is subject to the policies of the Michigan Department of Corrections, including specifically PD 03.04.100.
>
> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after November 1, 2002, whose hygiene requirements were or are subject to the policies and practices of the Michigan Department of Corrections, including specifically PD 04.02.120 and who were at any time denied indigent status while incarcerated.

Defendants filed a response to the motion on October 15, 2012, arguing that certification is inappropriate because: (1) the general class definition is overly broad; (2) the plaintiffs do not present questions of law in common with the proposed class; (3) the plaintiffs' claims are not typical of the class; (4) the proposed class cannot be appropriately certified under Rule 23(b)(2) because any claims by the named plaintiffs for injunctive relief are moot. Plaintiffs filed a reply on October 29, 2012.

B.   *Legal Standard*

The standards governing certification and maintenance of class actions are set forth in Rule 23 of the Federal Rules of Civil Procedure. In relevant part, Rule 23 provides:

> (a) **Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) **Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23. As the language of the rule makes clear, a class action may not be certified unless the named plaintiffs satisfy all four of the prerequisites set forth in subdivision (a), as well as at least one of the conditions set forth in subdivision (b). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The named plaintiffs bear the burden of establishing these prerequisites. *See id.* "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Dukes*, 131 S. Ct. at 2551. Because a class action binds parties not involved, and perhaps not aware, of the class action, certification of a class implicates interests protected by the Due Process Clause. For this reason, a court must conduct a "rigorous analysis" of the Rule 23 factors before certifying a class action. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also*, *Dukes*, 131 S. Ct. at 2551.

C.    *Analysis*

Here, the Court need not consider whether plaintiffs can satisfy the four requirements of subdivision (a), because even if they could they have failed to demonstrate one of the conditions set forth in subdivision (b). Plaintiffs seek certification under subdivision (b)(2), which "allows class

treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Dukes*, 131 S. Ct. at 2557 (quoting FED. R. CIV. P. 23(b)(2)). In *Dukes*, the Court explained that Rule 23(b)(2) does not permit a class involving claims for individualized relief. Examining the history and structure of Rule 23, and in light of due process concerns attendant upon a mandatory class under Rule 23(b)(2) (as opposed to a class under Rule 23(b)(3), which has greater procedural protections and affords a putative class member the opportunity to opt out of the class), the Court concluded:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Dukes*, 131 S. Ct. at 2557. While the Court left open the question whether merely incidental monetary damages would preclude a Rule 23(b)(2) class, it did make clear that individualized claims for monetary relief need not predominate over the injunctive relief claims to render Rule 23(b)(2) inappropriate. *See id.* at 2557-60; *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26, 29 (2d Cir. 2012). Indeed, although it does not expressly so hold, *Dukes* suggests that a Rule 23(b)(2) class is inappropriate where the claims asserted are the type that are susceptible to monetary damage awards, even if monetary damages are not actually sought by the named plaintiffs. The Court explained that the plaintiffs' proposed

> predominance test . . . creates perverse incentives for class representatives to place at risk potentially valid claims for monetary relief. In this case, for example, the named plaintiffs declined to include employees' claims for compensatory damages in their complaint. That strategy of including only backpay claims made it more likely that monetary relief would not 'predominate.' But it also created the

> possibility (if the predominance test were correct) that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from. If it were determined, for example, that a particular class member is not entitled to backpay because her denial of increased pay or a promotion was *not* the product of discrimination, that employee might be collaterally estopped from independently seeking compensatory damages based on that same denial. That possibility underscores the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives' or go it alone–a choice Rule 23(b)(2) does not ensure that they have.

*Dukes*, 131 S. Ct. at 2559 (emphasis in original). In other words, a putative class representative, by crafting an injunctive relief class for his own tactical reasons, should not be permitted to "place[] class members' ability to pursue individualized claims for monetary relief in question." *Cholakyan v. Mercedez-Benz, USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012). This problem is particularly acute where it is clear that a substantial portion of the class lacks standing to seek injunctive relief and could not benefit from any prospective relief ordered by the court. In *Dukes*, the Court noted that an additional problem with the plaintiffs' proposed class was that it included former employees, or people who would be former employees by the time any prospective relief was ordered. "As a consequence, even though the validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*,' about half the members of the class . . . have no claim for injunctive relief at all." *Dukes*, 131 S. Ct. at 2560 (quoting FED. R. CIV. P. 232(b)(2)) (emphasis by Court); *see also*, *Sepulveda v. Wal-Mart Stores, Inc.*, 464 Fed. Appx. 636, 637 (9th Cir. 2011).

In light of *Dukes*, a Rule 23(b)(2) class is not appropriate here. Plaintiffs' claims, challenging the adequacy of medical care at STF, are the type that are ordinarily resolved through actions seeking damages, and rulings in the case contrary to plaintiffs' positions could have the

effect of precluding a subsequent damages action by an individual plaintiff.[3] And indeed, in this case, plaintiffs seek $10 million in compensatory damages, relief that cannot be characterized as merely incidental to the request for injunctive relief. Further, plaintiffs' proposed class and subclasses include both current and former inmates at STF, rendering injunctive relief wholly inapplicable to a substantial portion of the class; indeed, none of the named plaintiffs remaining in the case could benefit from injunctive relief, as they are all no longer incarcerated at STF. In short, "[t]he majority of Plaintiffs' proposed class members would lack standing to assert claims for injunctive relief. Furthermore, Plaintiffs' claims for monetary relief are not incidental to Plaintiffs'

---

[3]As the Sixth Circuit has explained, the concept of res judicata actually encompasses two distinct concepts. *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. Oct. 3, 1997); *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion, or "true" res judicata, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger*, 126 F.3d at 852 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984))); *see also*, *J.Z.G. Resources*, 84 F.3d at 214. Issue preclusion, or collateral estoppel, on the other hand, mandates that "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Heyliger*, 126 F.3d at 853 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)). The preclusive effect of a prior federal court judgment is governed by federal common law. *See EB-Bran Productions v. Warner*, 242 Fed. Appx. 311, 312 (6th Cir. 2007) (citing *Blonder-Tongue Labs., Inc. v. University of Ill. Foundation*, 402 U.S. 313, 324 n.12 (1971); RESTATMENT (SECOND) OF JUDGMENTS § 87 (1982)).

There is no question that principles of claim and issue preclusion apply to judgments rendered in class actions. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). If plaintiffs here truly seek only injunctive relief on the basis of class-wide claims, any judgment in this case would not have claim-preclusive effect on a subsequent damages action brought by an individual prisoner. *See Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993); *cf. Cooper*, 467 U.S. at 880. The resolution of any issues actually litigated and determined, however, would have preclusive effect. *See Crowder v. Lash*, 687 F.2d 996, 1007-11 (7th Cir. 1982) (inmates individual monetary claim not barred by prior injunctive relief class action under principles of res judicata, but claim preclusion was still applicable to any issues actually litigated). Thus, while a class action would not preclude any member from pursuing an individual damages *claim*, it could have the effect of precluding him from establishing certain *issues* upon which the success of the claim depends. It is for this reason that a (b)(2) class would "create[] the possibility . . . that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from." *Dukes*, 131 S. Ct. at 2559.

10

claims for injunctive relief, and Plaintiffs' claims for monetary relief would require individualized determinations. Accordingly, certification of Plaintiffs' monetary and injunctive claims under Rule 23(b)(2) is not appropriate." *Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621, at *18 (Jan. 3, 2012), *magistrate judge's report and recommendation adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012). Because plaintiffs' claims include individualized claims for monetary relief, they "belong in Rule 23(b)(3)." Plaintiffs have proceeded only under (b)(2), and thus have not attempted to make a showing that they satisfy the requirement of a (b)(3) class, and they thus have not "affirmatively demonstrate[d] [their] compliance with the Rule." *Dukes*, 131 S. Ct. at 2551.

D.   *Conclusion*

In view of the foregoing, the Court should deny plaintiffs' motion and amended motion for class certification. This denial should be without prejudice to plaintiffs renewing their motion if they can "affirmatively demonstrate" that they are entitled to maintain a class action under Rule 23(a) and (b)(3).

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                           s/Paul J. Komives
                                           PAUL J. KOMIVES
                                           UNITED STATES MAGISTRATE JUDGE

Dated: 1/7/13

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on January 7, 2013.
>
>                               s/Eddrey Butts
>                               Case Manager