UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE, CLAUDE HOFFMAN, GUY CURTIS, MICHAEL KANIPE, DOUGLAS WARNER, CARLTON RIDER, DANNY FRITTS, RICHARD BOONE II, TONY PELLIN, MARK ASHLEY, TERRY GEORGE, WILLIAM TAYLOR, LOREN WICKER, MICHAEL LAKE, STEWART GATES, ROBERT McMURRAY, ERICK DeFOREST, ANTONIO MANNING, HILTON EVANS, JOHN DOE, ONE through SEVEN, on behalf of themselves and all other similarly situated individuals,

    Plaintiffs,

v.

MDOC DIRECTOR PATRICIA CARUSO, WARDEN BLAINE LAFLER, AND DEPUTY WARDEN BARBARA MEAGHER, THEIR SUPERIORS, SUBORDINATES, SUB-CONTRACTORS, CONTRACTORS, REPLACEMENTS, PREDECESSORS, AND JOHN/JANE DOE, EIGHT through FOURTEEN, in their individual and official capacity,

    Defendants.
_____/

CASE NO. 2:06-CV-10961
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL KOMIVES

### REPORT AND RECOMMENDATION ON PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION (docket #270)

I. RECOMMENDATION: The Court should deny plaintiffs' renewed motion for class certification.

II. REPORT:

A. *Procedural Background*

Plaintiffs, nineteen current and former inmates of the St. Louis and Mid-Michigan

Correctional Facilities in St. Louis, Michigan, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on March 3, 2006. Plaintiffs bring claims, on behalf of themselves and a purported class of all prisoners at the St. Louis and Mid-Michigan Correctional Facilities, against the defendant prison officials relating to the conditions of confinement at the facilities. Plaintiffs' complaint is divided into five claims for relief: (1) an Eighth Amendment claim based on denial of medical care and medication, dangerous noise levels, denial of restroom use, serious disease outbreaks, and prisoners being forced to wait in the cold to receive medications; (2) an Eighth Amendment claim based on cold cubicles and poor ventilation, cramped living space, denial of hygiene, and contaminated drinking water; (3) an Eighth Amendment claim based on the lack of a proper fire suppression system, overcrowded conditions, and prisoner access to inmates' files; (4) a First Amendment access to courts claim based on inadequate law library time and inadequate law library resources; and (5) a Fourteenth Amendment due process claim based on removal of property without a proper hearing and removal of funds from prisoner accounts without hearing and in excess of that authorized by law.

Five plaintiffs were subsequently dismissed from the action, and *pro bono* counsel was appointed to represent the remaining 14 plaintiffs. On October 21, 2008, counsel filed an amended complaint. In the amended complaint plaintiffs, now consisting solely of current or former inmates of STF, assert three counts, broken down into numerous subparts, some of which are further broken down into sub-subparts, as illustrated in the following chart:

| COUNT | CLAIM | SUBPART | SUB-SUBPART | AMEND. COMPL. |
|---|---|---|---|---|
| I | Eighth Amendment Violations | (A) Cruel & Unusual Punishment | (1) Denial of Medical Care | ¶¶ 27-29 |
| | | | (2) Dangerous Noise Levels | ¶¶ 30-31 |
| | | | (3) Denial of Bathroom Use | ¶¶ 32-33 |
| | | | (4) Disease Outbreaks | ¶¶ 34-39 |
| | | | (5) Medline Prisoners Forced into Cold | ¶ 40 |
| | | (B) Inhumane Treatment | (1) Cold Cubicles and Poor Ventilation | ¶¶ 41-44 |
| | | | (2) Crammed Living Space | ¶¶ 45-47 |
| | | | (3) Denial of Hygiene | ¶¶ 48-49 |
| | | | (4) Contaminated Drinking Water | ¶¶ 50-52 |
| | | (C) Unsafe Living Conditions | (1) Lack of Fire Suppression System | ¶¶ 53-55 |
| | | | (2) Overcrowding | ¶¶ 56 |
| | | | (3) Access to Prisoner's Personal Files | ¶¶ 57-58 |
| II | First, Fifth, and Fourteenth Amendment Access to Courts Violations | (A) Inadequate Law Library Time | | ¶¶ 59-61 |
| | | (B) Limited Law Books | | ¶¶ 62-64 |
| | | (C) Seizure of Property and Legal Materials | | ¶¶ 65-66 |
| III | 14th Amendment Due Process Violations | Removal of Property or Money without a Hearing | | ¶¶ 67-73 |

The named defendants are Patricia Caruso, Director of the Michigan Department of Corrections (MDOC); Blaine Lafler, the Warden at STF during the relevant time period; and Barbara Meagher,

a Deputy Warden at STF during the relevant time period. The complaint also names as defendants unknown employees of Correctional Medical Services, Inc., and unknown MDOC employees in the Bureau of Health Care Services. Plaintiffs seek $10,000,000.00 in compensatory damages, as well as declaratory and injunctive relief.[1]

On March 23, 2010, counsel sought to withdraw with respect to eight of the remaining fourteen plaintiffs, based on their inability to contact these plaintiffs and these plaintiffs' failure to appear for their depositions or provide requested discovery. I granted counsel's motion to withdraw on April 30, 2010. The remaining plaintiffs represented by counsel are Claude Hoffman, Michael Kanipe, Richard Boone, William Taylor, Michael Lake, and Hilton Evans. The remaining plaintiffs who are no longer represented by counsel are Arthur Rouse, Danny Fritts, Tony Pellin, Stewart Gates, Terry George, Mark Ashley, Robert McMurray, and Eric DeForest. On February 18, 2011, I filed a Report addressing various dispositive motions filed by defendants. In that Report, I recommended that the Court: (1) dismiss for failure to prosecute the claims of plaintiffs Rouse, Fritts, Pellin, Gates, George, Ashley, McMurray, and DeForest pursuant to Rule 41(b); (2) dismiss plaintiffs' claims alleging denial of bathroom use (Claim I(A)(3), ¶¶ 32-33), disease outbreaks (Claim I(A)(4), ¶¶ 34-39), exposure in medline (Claim I(A)(5), ¶ 40), cold cubicles (¶ 41 of Claim I(B)(1)), denial of access to courts (Claim II, ¶¶ 59-66), and removal of property (Claim III, ¶¶ 67-73); (3) deny defendants' motion for judgment on the pleadings with respect to plaintiffs' claims alleging denial of medical care (Claim I(A)(1), ¶¶ 27-29), denial of hygiene (Claim I(B)(3), ¶¶ 48-49), and contaminated drinking water (Claim I(B)(4), ¶¶ 50-52); (4) grant defendants' motion for

---

[1] For ease of reference, I will refer to the claims raised by plaintiffs using the letters and numbers provided in the foregoing chart. Thus, plaintiffs' denial of medical care claim will be referred to as Claim I(A)(1), and so on.

summary judgment with respect to plaintiffs' claims alleging dangerous noise levels (Claim I(A)(2), ¶¶ 30-31), poor ventilation (¶¶ 42-44 of Claim I(B)(1)), crammed living space and overcrowding (Claims I(B)(2) and I(C)(2), ¶¶ 45-47, 56), denial of hygiene by failure to replace lost or stolen hygiene products (¶ 49 of Claim I(B)(3)), contaminated drinking water (Claim I(B)(4), ¶¶ 50-52), and lack of fire suppression system (Claim I(C)(1), ¶¶ 53-55); and (5) deny defendants' motion for summary judgment with respect to plaintiffs' claim alleging denial of hygiene products by virtue of a prison policy forbidding indigent status to prisoners who have their work or schooling terminated (¶ 48 of (Claim I(B)(3)) and with respect to plaintiffs' claims for injunctive relief. On March 14, 2011, the Court entered an Order adopting my Report and Recommendation. As a result of the Court's Order, the only remaining claims are the denial of medical care claims asserted in ¶¶ 27-29 of the Amended Complaint and the denial of hygiene claim asserted in ¶ 48, with respect to plaintiffs Hoffman, Kanipe, Boone, Taylor, Lake, and Evans.

On August 14, 2012, plaintiffs filed a motion and amended motion for class certification.

The matter is currently before the Court on plaintiffs' motion and amended motion for class certification. Those motions sought to certify, pursuant to FED. R. CIV. P. 23(b)(2), a class consisting of:

> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after February 14, 2005, whose healthcare and general living conditions were and are subject to the polices and practices of the Michigan Department of Corrections.

Plaintiff's also seek to certify two subclasses consisting of:

> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after February 14, 2005, whose healthcare was and is subject to the policies of the Michigan Department of Corrections, including specifically PD 03.04.100.

> All current and former prisoners housed at the Mid-Michigan Correctional facilities in St. Louis, Gratiot, Michigan on or after November 1, 2002, whose hygiene requirements were or are subject to the policies and practices of the Michigan Department of Corrections, including specifically PD 04.02.120 and who were at any time denied indigent status while incarcerated.

Defendants filed a response to the motion on October 15, 2012, arguing that certification is inappropriate because: (1) the general class definition is overly broad; (2) the plaintiffs do not present questions of law in common with the proposed class; (3) the plaintiffs' claims are not typical of the class; (4) the proposed class cannot be appropriately certified under Rule 23(b)(2) because any claims by the named plaintiffs for injunctive relief are moot. On January 7, 2013, I filed a Report recommending that the Court deny the motions. I explained that regardless of whether plaintiffs could satisfy the four requirements of Rule 23(a), they could not satisfy one of the additional requirements of Rule 23(b). Specifically, I recommended that the Court conclude that an injunctive relief class under Rule 23(b)(2) was not appropriate because the remaining medical care claims are the type that are ordinarily resolved through actions seeking monetary damages, and rulings in the class action could prejudice the rights of potential class members to monetary relief. I further explained that none of the remaining named plaintiffs had standing to seek injunctive relief because they are no longer incarcerated at STF, and that a substantial portion of the proposed class would likewise have no stake in any claim for injunctive relief. Plaintiffs' monetary relief claims, I noted, belong in a Rule 23(b)(3) class. Because plaintiffs had attempted to make no showing that they satisfy the requirements of a Rule 23(b)(3) class, I recommended that the Court deny the class certification motions without prejudice to plaintiffs renewing their motion if they can affirmatively demonstrate that they are entitled to maintain a class action under Rule 23(b)(3). The Court entered an Order adopting my Report and denying the motions on February 13, 2013.

The matter is currently before the Court on plaintiffs' renewed motion for class certification, filed on March 11, 2013. In this motion, plaintiff's seek certification of the same class and subclasses as set forth in their prior motions, but do so under Rule 23(b)(3). Defendants filed a response on March 18, 2013. In their response, defendants reiterate their prior arguments that (1) the general class definition is overly broad; (2) the plaintiffs do not present questions of law in common with the proposed class; and (3) the plaintiffs' claims are not typical of the class. Defendants also argue that class certification is not appropriate under Rule 23(b)(3) because the common questions would not predominate over individual issues, the nature and extent of existing litigation does not favor certification, and certification would be unmanageable. For the reasons that follow, the Court should deny plaintiffs' renewed motion for class certification.

B.   *Legal Standard*

The standards governing certification and maintenance of class actions are set forth in Rule 23 of the Federal Rules of Civil Procedure. In relevant part, Rule 23 provides:

> (a) **Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) **Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds

> generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>     (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23. As the language of the rule makes clear, a class action may not be certified unless the named plaintiffs satisfy all four of the prerequisites set forth in subdivision (a), as well as at least one of the conditions set forth in subdivision (b). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The named plaintiffs bear the burden of establishing these prerequisites. *See id.* "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Dukes*, 131 S. Ct. at 2551. Because a class action binds parties not involved, and perhaps not aware, of the class action, certification of a class implicates interests protected by the Due Process Clause. For this reason, a court must conduct a "rigorous analysis" of the Rule 23 factors before certifying a class action. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also*, *Dukes*, 131 S. Ct. at 2551.

C.   *Analysis*

Here, as before, the Court need not consider whether plaintiffs can satisfy the four requirements of subdivision (a), because even if they could they have failed to demonstrate one of the conditions set forth in subdivision (b). Plaintiffs now seek certification under subdivision (b)(3), which provides that a court may certify a class if

>   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>      (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>      (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>      (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3). Thus, "[t]o qualify for certification under Rule 23(b)(3) a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The predominance criterion is similar to the commonality criterion of Rule 23(a), but "is far more demanding." *Id.* at 624; *see also*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23(b)(3) is an "adventuresome innovation," designed for "situations in which class-action treatment is not as clearly called for" as under Rule 23(b)(1) and (2). *Comcast Corp.*, 133 S. Ct. at 1432 (internal quotations omitted). The purpose of the rule is to cover cases "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, [such that] aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also*, *Amchem Prods.*, 521 U.S. at 617.

Here, plaintiffs have failed to show that questions common to the class predominate over questions affecting only individual members. Plaintiffs' remaining claims relate only to medical care and the hygiene policy. With respect to the former, a prisoner can succeed on an Eighth

Amendment medical care claim only by showing that the defendants were deliberately indifferent to his serious medical needs. *See Perez v. Oakland County*, 466 F.3d 416, 423-24 (6th Cir. 2006); *Kirkham v. Wilkinson*, 101 Fed. Appx. 628, 630 (6th Cir. 2004). For deliberate indifference to be established, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, before any class member would be entitled to recover, he would have to show that: (1) he had a serious medical need; (2) he was denied or delayed treatment for that serious medical need; (3) that the denial resulted from one or more defendants' deliberate indifference; and (4) that the denial caused him damages. While the alleged inadequacies in the medical facilities may provide some (although not total) common proof with respect to the third issue, each of the other three requires individualized proof for each proposed class member. Further, this is not a case where each plaintiff with a valid claim has a claim so insubstantial that individualized litigation is not practicable. On the contrary, depending on the circumstances of the care and the injuries sustained, damages in prisoner medical care cases can be quite high. *See, e.g.*, *Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 181 (11th Cir. 2012) (prisoner awarded $1.2 million on medical care claim); *Schaub v. VonWald*, 638 F.3d 905, 909 (8th Cir. 2011) (nearly $1 million); *Ford v. County of Grand Traverse*, 535 F.3d 483, 489 (6th Cir. 2008) ($214,000.00). Given the numerous and extensive individualized inquiries that would be required to resolve plaintiffs' medical claims, plaintiffs have failed to show that the common questions predominate and that a class would be a superior method for adjudicating their medical claims. *See Wrightsell v. Sheriff of Cook County*, No. 08 CV 5451, at *2-*3 (N.D. Ill. Feb. 19, 2009); *Bennett v. Correctional*

*Med. Servs., Inc.*, No. 02-4993, 2008 WL 2064202, at *15 (D.N.J. May 14, 2008); *cf. Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 893 (7th Cir. 2012) (relying on same considerations in concluding that prisoners had not shown commonality under Rule 23(a)). *See generally*, *Amchem Prods.*, 521 U.S. at 624-25 (class of persons exposed to asbestos not properly certified under Rule 23(b)(3) where their level of exposure, the effects of the exposure on their health, and damages resulting therefrom were all individualized questions).

The same analysis holds true for plaintiffs' claims based on the hygiene policy. That policy is not unconstitutional on its face. In addition to establishing his own damages, to establish an Eighth Amendment claim based on a denial of indigent status, resulting in a loss of hygiene items, each plaintiff must establish that the removal from indigent status exhibited deliberate indifference to the inmate's hygiene needs, that the plaintiff did not have the ability to obtain or purchase adequate hygiene items, and that the loss of hygiene items resulted in extreme discomfort or a complete denial of the basic elements of hygiene beyond mere discomfort or inconvenience. *See Flavory v. Bonn*, 604 F.3d 249, 255 & n.1 (6th Cir. 2010) (discussing *Argue v. Hoffman*, 80 Fed. Appx. 427, 430 (6th Cir. 2003); *Brown v. Brown*, 46 Fed. Appx. 324, 325-26 (6th Cir. 2002); *Moore v. Chavez*, 36 Fed. Appx. 169, 171 (6th Cir. 2002)). Thus, as with plaintiffs' medical claims, individual issues would predominate over any issues common to the class.

In short, based on the nature of the claims asserted and the proof required to establish those claims, "[q]uestions of individual [liability] and damage[s] . . . will inevitably overwhelm questions common to the class." *Comcast Corp.*, 133 S. Ct. at 1433. Thus, plaintiffs have failed to sustain their burden of demonstrating that class certification under Rule 23(b)(3) is proper. *See Dukes*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance

with the Rule[.]").

D.   *Conclusion*

In view of the foregoing, the Court should deny plaintiffs' renewed motion for class certification.

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2013

PROOF OF SERVICE

   I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 3, 2013          s/ Lisa C. Bartlett
                 Case Manger