UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ROUSE, CLAUDE HOFFMAN, GUY
CURTIS, MICHAEL KANIPE, DOUGLAS
WARNER, CARLTON RIDER, DANNY FRITTS,
RICHARD BOONE II, TONY PELLIN, MARK
ASHLEY, TERRY GEORGE, WILLIAM
TAYLOR, LOREN WICKER, MICHAEL LAKE,
STEWART GATES, ROBERT McMURRAY,
ERICK DeFOREST, ANTONIO MANNING,
HILTON EVANS, JOHN DOE, ONE through
SEVEN, on behalf of themselves and all other
similarly situated individuals,

          Plaintiffs,

      v.

MDOC DIRECTOR PATRICIA CARUSO,
WARDEN BLAINE LAFLER, AND DEPUTY
WARDEN BARBARA MEAGHER, THEIR
SUPERIORS, SUBORDINATES, SUB-
CONTRACTORS, CONTRACTORS,
REPLACEMENTS, PREDECESSORS, AND
JOHN/JANE DOE, EIGHT through FOURTEEN, in
their individual and official capacity,

          Defendants.

_____/

CASE NO. 2:06-CV-10961
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANTS' SECOND MOTION FOR
SUMMARY JUDGMENT (docket #291)**

I.    <u>RECOMMENDATION</u>: The Court should grant defendants' second motion for summary

judgment.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Plaintiffs, nineteen current and former inmates of the St. Louis and Mid-Michigan Correctional Facilities in St. Louis, Michigan, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on March 3, 2006.  Plaintiffs bring claims, on behalf of themselves and a purported class of all prisoners at the St. Louis and Mid-Michigan Correctional Facilities (collectively referred to herein as "STF"), against the defendant prison officials relating to the conditions of confinement at the facilities.  Plaintiffs' complaint is divided into five claims for relief: (1) an Eighth Amendment claim based on denial of medical care and medication, dangerous noise levels, denial of restroom use, serious disease outbreaks, and prisoners being forced to wait in the cold to receive medications; (2) an Eighth Amendment claim based on cold cubicles and poor ventilation, cramped living space, denial of hygiene, and contaminated drinking water; (3) an Eighth Amendment claim based on the lack of a proper fire suppression system, overcrowded conditions, and prisoner access to inmates' files; (4) a First Amendment access to courts claim based on inadequate law library time and inadequate law library resources; and (5) a Fourteenth Amendment due process claim based on removal of property without a proper hearing and removal of funds from prisoner accounts without hearing and in excess of that authorized by law.

Five plaintiffs were subsequently dismissed from the action, and *pro bono* counsel was appointed to represent the remaining 14 plaintiffs.  On October 21, 2008, counsel filed an amended complaint.  In the amended complaint plaintiffs, now consisting solely of current or former inmates of STF, assert three counts, broken down into numerous subparts, some of which are further broken down into sub-subparts, as illustrated in the following chart:

2

| COUNT | CLAIM | SUBPART | SUB-SUBPART | AMEND. COMPL. |
|---|---|---|---|---|
| I | Eighth Amendment Violations | (A) Cruel & Unusual Punishment | (1) Denial of Medical Care | ¶¶ 27-29 |
| | | | (2) Dangerous Noise Levels | ¶¶ 30-31 |
| | | | (3) Denial of Bathroom Use | ¶¶ 32-33 |
| | | | (4) Disease Outbreaks | ¶¶ 34-39 |
| | | | (5) Medline Prisoners Forced into Cold | ¶ 40 |
| | | (B) Inhumane Treatment | (1) Cold Cubicles and Poor Ventilation | ¶¶ 41-44 |
| | | | (2) Crammed Living Space | ¶¶ 45-47 |
| | | | (3) Denial of Hygiene | ¶¶ 48-49 |
| | | | (4) Contaminated Drinking Water | ¶¶ 50-52 |
| | | (C) Unsafe Living Conditions | (1) Lack of Fire Suppression System | ¶¶ 53-55 |
| | | | (2) Overcrowding | ¶¶ 56 |
| | | | (3) Access to Prisoner's Personal Files | ¶¶ 57-58 |
| II | First, Fifth, and Fourteenth Amendment Access to Courts Violations | (A) Inadequate Law Library Time | | ¶¶ 59-61 |
| | | (B) Limited Law Books | | ¶¶ 62-64 |
| | | (C) Seizure of Property and Legal Materials | | ¶¶ 65-66 |
| III | 14th Amendment Due Process Violations | Removal of Property or Money without a Hearing | | ¶¶ 67-73 |

The named defendants are Patricia Caruso, Director of the Michigan Department of Corrections

(MDOC); Blaine Lafler, the Warden at STF during the relevant time period; and Barbara Meagher,

a Deputy Warden at STF during the relevant time period.  The complaint also names as defendants unknown employees of Correctional Medical Services, Inc., and unknown MDOC employees in the Bureau of Health Care Services.  Plaintiffs seek $10,000,000.00 in compensatory damages, as well as declaratory and injunctive relief.[1]

On March 23, 2010, counsel sought to withdraw with respect to eight of the remaining fourteen plaintiffs, based on their inability to contact these plaintiffs and these plaintiffs' failure to appear for their depositions or provide requested discovery.  I granted counsel's motion to withdraw on April 30, 2010.  The remaining plaintiffs represented by counsel are Claude Hoffman, Michael Kanipe, Richard Boone, William Taylor, Michael Lake, and Hilton Evans.  The remaining plaintiffs who at that point were no longer represented by counsel are Arthur Rouse, Danny Fritts, Tony Pellin, Stewart Gates, Terry George, Mark Ashley, Robert McMurray, and Eric DeForest.  On February 18, 2011, I filed a Report addressing various dispositive motions filed by defendants.  In that Report, I recommended that the Court:  (1) dismiss for failure to prosecute the claims of plaintiffs Rouse, Fritts, Pellin, Gates, George, Ashley, McMurray, and DeForest pursuant to Rule 41(b); (2) dismiss plaintiffs' claims alleging denial of bathroom use (Claim I(A)(3), ¶¶ 32-33), disease outbreaks (Claim I(A)(4), ¶¶ 34-39), exposure in medline (Claim I(A)(5), ¶ 40), cold cubicles (¶ 41 of Claim I(B)(1)), denial of access to courts (Claim II, ¶¶ 59-66), and removal of property (Claim III, ¶¶ 67-73); (3) deny defendants' motion for judgment on the pleadings with respect to plaintiffs' claims alleging denial of medical care (Claim I(A)(1), ¶¶ 27-29), denial of hygiene (Claim I(B)(3), ¶¶ 48-49), and contaminated drinking water (Claim I(B)(4), ¶¶ 50-52); (4)

---

[1]For ease of reference, I will refer to the claims raised by plaintiffs using the letters and numbers provided in the foregoing chart.  Thus, plaintiffs' denial of medical care claim will be referred to as Claim I(A)(1), and so on.

4

grant defendants' motion for summary judgment with respect to plaintiffs' claims alleging dangerous noise levels (Claim I(A)(2), ¶¶ 30-31), poor ventilation (¶¶ 42-44 of Claim I(B)(1)), crammed living space and overcrowding (Claims I(B)(2) and I(C)(2), ¶¶ 45-47, 56), denial of hygiene by failure to replace lost or stolen hygiene products (¶ 49 of Claim I(B)(3)), contaminated drinking water (Claim I(B)(4), ¶¶ 50-52), and lack of fire suppression system (Claim I(C)(1), ¶¶ 53-55); and (5) deny defendants' motion for summary judgment with respect to plaintiffs' claim alleging denial of hygiene products by virtue of a prison policy forbidding indigent status to prisoners who have their work or schooling terminated (¶ 48 of (Claim I(B)(3)) and with respect to plaintiffs' claims for injunctive relief.  On March 14, 2011, the Court entered an Order adopting my Report and Recommendation.  As a result of the Court's Order, the only remaining claims are the denial of medical care claims asserted in ¶¶ 27-29 of the Amended Complaint and the denial of hygiene claim asserted in ¶ 48, with respect to plaintiffs Hoffman, Kanipe, Boone, Taylor, Lake, and Evans.[2]

The matter is currently before the Court on defendants' second motion for summary judgment, filed on June 9, 2014.  Defendants argue that plaintiff's injunctive relief claims are moot, that the hygiene claims should be dismissed, that the claims of plaintiff's Kanipe and Taylor should be dismissed for failure to prosecute, and that they are entitled to summary judgment on plaintiffs' medical care claims.  Plaintiffs filed a response to this motion on July 25, 2014.  Plaintiffs agree that their claims for injunctive relief are moot and that none of the remaining plaintiffs has a claim relating to the denial of hygiene, but argue that defendants are not entitled to summary judgment on

---

[2]On May 31, 2013, I filed a Report recommending that the Court deny plaintiffs' renewed motion for class certification.  The Court adopted that Report and denied the motion for class certification on October 25, 2013.  Accordingly, plaintiffs' class action allegations are no longer pending, and only the claims of the individual plaintiffs discussed above remain in the case.

plaintiffs' medical care claims.[3]

B.      *Plaintiffs Kanipe and Taylor*

Defendants first argue that the Court should dismiss the claims of plaintiffs Kanipe and Taylor for failure to prosecute, pursuant to FED. R. CIV. P. 41(b).  The Court should agree.

Rule 41 provides, in relevant part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).  In determining whether to dismiss for failure to prosecute, a court should consider: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See Oleoproteinas Del Sureste, S.A. v. French Oil Mill Machinery Company*, 202 F.R.D. 541, 545 (S.D. Ohio 2000) (citing *Stough v. Mayville Community School*, 138 F.3d 612, 615 (6th Cir. 1998)).  Here, these factors weigh in favor of dismissing the action.  Plaintiffs Kanipe and Taylor have been released from prison.  They have failed to provide the Court or their attorney with contact information, and according to counsel numerous unsuccessful attempts to contact and locate these plaintiffs have been made.  No further warning or lesser sanction would be effective, because so long as plaintiffs Kanipe and Taylor are unreachable no warning or sanction can be communicated to them.  *See Robinson v. Januszewski*, No. 11-CV-00747, 2012 WL 1247225, at *2, *3 (E.D.N.Y. Apr. 12, 2012).  These plaintiffs' failure to "communicate with [their] own attorney, or even make [their] whereabouts known to the Court

---

[3]Plaintiffs' brief takes no position on dismissal of the claims of plaintiffs Kanipe and Taylor for failure to prosecute, because counsel has been unable to communicate with these plaintiffs.  Counsel's separate motion to withdraw as counsel for these plaintiffs is addressed in a separate Order filed on this date.

or counsel[,] . . . have rendered it pointless for the Court to make further attempts to give [them] notice of the possible consequences of [their] continued failure to prosecute." *Lopez v. Smurfit-Stone Container Enters., Inc.*, 289 F.R.D. 103, 105 (W.D.N.Y. 2013). Further, as this case has been pending for over eight years and the trial date is fast approaching, allowing "this case to languish on the docket in the hope that plaintiff[s] will reappear in the future," *Robinson*, 2012 WL 1247225, at *3 (internal quotation omitted), would be both prejudicial to defendants and a waste of this Court's resources. *See also*, *Reeves v. Windsor Court Hotel*, No. 08-01324, 2010 WL 5376372, at *2 (E.D. La. Dec. 20, 2010). In short, these plaintiffs' failure to communicate with either the Court or counsel "demonstrate [their] lack of interest in prosecution this action." *Ali v. Hilton Gateway*, No. 05-2459, 2007 WL 121453, at *2 (D.N.J. Dec. 15, 2006); *see also*, *Sims v. Charter One Bank*, No. , 2011 WL 6934806, at *3 (N.D. Ohio Dec. 30, 2011) (dismissing for failure to prosecute where plaintiff failed to communicate with counsel and counsel could not locate plaintiff); *Jones v. Advanced Spine Fixation Sys., Inc.*, No. 96-339, 2005 WL 3657796, at *1 (D. Del. Sept. 28, 2005) (same). Accordingly, the Court should dismiss the claims of plaintiffs Kanipe and Taylor pursuant to Rule 41(b).

C.      *The Remaining Plaintiffs*

1.      *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

7

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).  "The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-

moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

      2.    *Injunctive Relief Claims*

Defendants argue that they are entitled to dismissal of plaintiffs' injunctive relief claims, because none of the remaining plaintiffs remains incarcerated at STF or under the supervision and control of the defendants.[4]   It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  Because plaintiffs are no longer incarcerated at STF, their request for injunctive relief is moot. *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992).  Plaintiffs concede that their injunctive relief claims are moot.  Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's claims for injunctive relief.

      3.    *Hygiene Claims*

Defendants also contend that they are entitled to summary judgment on plaintiffs' denial of hygiene claim, because none of the remaining plaintiffs has asserted a denial of hygiene claim.  The Court should agree.  In their response to defendants' motion, plaintiffs concede that in light of the Court's denial of class certification, "no parties to this action have sufficient denial of hygiene claims."  Pl.'s Resp., at 13.  Accordingly, the Court should grant summary judgment to defendants

---

[4]Defendants assert, without contradiction from plaintiffs, that all of the remaining plaintiffs except for plaintiff Boone have been released from prison.  Plaintiff Boone had been released, but is now incarcerated on a new conviction, and is housed at the Pugsley Correctional Facility.

with respect to the denial of hygiene claim asserted by plaintiffs.

      4.    *Medical Care Claims*

      Finally, defendants argue that they are entitled to summary judgment with respect to the remaining plaintiffs' medical care claims, because plaintiffs cannot establish their personal involvement in the alleged constitutional deprivations.

*a. Eighth Amendment Standard*

      To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

      The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also,*

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see*

*Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard, "a prison official may

be held liable under the Eighth Amendment for denying humane conditions of confinement only if

he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  A prison official is not free to

ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of

the harm that may befall a particular inmate.  *See id*. at 843-44.  However, prison officials may

escape liability if they show that they in fact did not know of the obvious risk to the inmate's health

or safety, or knowing of it, they acted reasonably under the circumstances.  *See id*. at 844-45.  In

short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere

negligence, or even gross negligence, will not suffice."  *Wright v. Taylor*, 79 Fed. Appx. 829, 831

(6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.

1999) (en banc)); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the

"recklessness" standard under criminal law); *James v. Milwaukee County*, 956 F.2d 696, 700 (7th

Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted)

("'Deliberate indifference' means *recklessness* in a criminal, subjective sense:  disregarding a risk

of danger so substantial that knowledge of the danger can be inferred.  Such disregard is tantamount

to intending that the injury occur.").

     Plaintiffs' claims that defendants denied medically necessary treatment are governed by these

objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the

Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness

or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 105.  Thus, a court faced with

failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious

illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996). However, mere conflicts between a prisoner and his medical providers over the proper course of treatment fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976). As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107. In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976). Thus, allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical  condition do[] not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc).

Moreover, it is well established that liability in a § 1983 action cannot be based on a theory

13

of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

### b. Analysis

There is no question that defendants–the MDOC Director, a Warden, and a Deputy Warden–had no personal involvement in the medical treatment received by plaintiffs. Plaintiffs do not suggest that these defendants approved or denied any particular treatment for their various medical problems, and it is well established that prison administrators are entitled to rely on the decisions made by medical personnel. *See Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001). Thus, as a general rule, "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Johnson v.*

*Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Nevertheless, a prisoner can establish a prison administrator's deliberate indifference by establishing that the official was responsible for systemic deficiencies in the medical care system. As I explained in my prior Report addressing defendants' motion to dismiss, "'[w]hen a prisoner class seeks to challenge an entire health care system, deliberate indifference to their health needs can be shown either by repeated acts which disclose a pattern of conduct by the prison medical staff, or by evidence of such systemic deficiencies in staffing, facilities, or procedures that unnecessary suffering is inevitable.'" R&R, dated 2/18/11, at 20-21 (quoting *Dean v. Coughlin*, 107 F.R.D. 331, 333 (S.D.N.Y. 1985) and citing *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 206 (D.P.R. 1998); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982)). Defendants argue that, because plaintiffs' request for class certification has been denied, their systemic medical claims must fail. This argument is without merit. While it is true that systemic medical claims generally arise in the context of class action litigation, defendants have cited and I have found no cases holding that an individual prisoner may not attempt to establish deliberate indifference through a showing of a systemically inadequate medical system. On the contrary, without explicitly addressing the issue, courts have permitted such claims to proceed. *See, e.g.*, *Doe v. Sullivan County Tenn.*, 956 F.2d 545, 549 (6th Cir. 1992); *Potts v. Moreci*, No. 12 C 5310, 2013 WL 5968929, at *4 (N.D. Ill. Nov. 7, 2013).

In proving their systemic medical claims, however, plaintiffs carry "a heavy burden." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). Importantly, it is not sufficient that defendants were responsible for and aware of systemic deficiencies which amounted to deliberate indifference. Even if plaintiffs make this showing, they "must still

15

demonstrate" that they "were in fact suffering from a serious medical problem and that the systemic failures caused injury by denying them necessary care." *Langley v. Coughlin*, 715 F. Supp. 522, 560 (S.D.N.Y. 1989); *see also*, *Doe*, 956 F.2d at 549-50; *Carrea v. California*, No. 07-1148, 2009 WL 1770130, at *6 (C.D. Cal. June 18, 2009), *aff'd in relevant part, rev'd in part*, 551 Fed. Appx. 368, 369 (9th Cir. 2014). *See generally*, *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013) ("[P]laintiff's alleging deliberate indifference must . . . demonstrate that the defendant's actions were both an actual and proximate cause of their injuries.").

At the outset, plaintiffs have failed to proffer evidence sufficient to carry their "heavy burden" of demonstrating that there were such systemic deficiencies in the medical care at STF that defendants' failure to correct these deficiencies amounted to deliberate indifference. In their amended complaint, plaintiffs allege that the medical care system at STF was deficient because there was inadequate staffing, no on-site doctor, and an emergency medical care policy that allowed medical providers to diagnose prisoners without examination. *See* Amended Compl., ¶¶ 12-14. These allegations alone, however, are insufficient to survive summary judgment. To defeat defendants' motion, plaintiffs must present evidence of "specific deficiencies in the health care system from which deliberate indifference can be inferred," *Benson v. Cady*, 761 F.2d 335, 341 (7th Cir. 1985), such as investigative reports, expert testimony, affidavits from people knowledgeable about the system, or evidence of widespread and longstanding instances of inadequate care. *See, e.g.*, *Brown v. Bolin*, 500 Fed. Appx. 309, 313 (5th Cir. 2012). For example, in *Wellman*, *supra*, the plaintiffs presented evidence that prison doctors were recent immigrants who could not communicate with prisoners effectively, expert testimony (from both the plaintiffs' and defendants' experts) on the serious deficiencies in care, and evidence of numerous instances of substandard care.

16

*See Wellman*, 715 F.2d at 272-74.  Similarly, in *Ramos*, *supra*, the plaintiffs presented extensive expert and lay testimony detailing the lack of adequate staffing and its effect on the delivery of health care to prisoners.  *See Ramos*, 639 F.2d at 576-77.  In *Grubbs*, *supra*, the record included extensive factual findings made in a related state court action, the accuracy of which the defendants did not dispute and which were supported in some measure by the defendants' own expert.  *See Grubbs*, 552 F. Supp. at 1065-70.  In other cases, similarly extensive evidence was presented in support of the plaintiffs' systemic medical care claims.  *See, e.g.*, *Shepherd v. Dallas County*, 591 F.3d 445, 453 (5th Cir. 2009) (plaintiff presented "extensive independent evidence" including "a comprehensive evaluative report commissioned by the County, [a Department of Justice] report, affidavits from employees of the jail and its medical contractor attesting to the accuracy and applicability of the reports, and a plethora of additional documentary evidence.").

Here, by contract, "[t]he record lacks evidence of a systemic failure of medical care of the type that [courts] have found to present a[n] unconstitutional condition of confinement."  *Brown*, 500 Fed. Appx. at 313.  Other than their own specific complaints of treatment, plaintiffs have presented no evidence demonstrating the extent of the alleged deficiencies in care.  The only evidence they point to is a report prepared by the Michigan Auditor General in March 2008.  *See* Pl.'s Br., Ex. H.  The audit was conducted from April through September 2006, and included examination of records from October 1, 2003, through July 31, 2006.  *See id.* at 10.  The audit did conclude that the Bureau of Health Care Services (BHCS) failed to "conduct all required chronic condition medical evaluations, routine annual health screenings, and clinic visits resulting from prisoner requests for health care services."  *Id.* at 15.  This determination, however, was based on a random sampling from throughout the prison system.  Nothing in the report speaks to the adequacy

17

of health care at STF in particular.  Moreover, even if relevant to the conditions at STF in particular, the report does not establish defendants' deliberate indifference.  First, the report does not establish defendants' knowledge of the inadequacies in the prison health care system prior to the time of the report, which is the time frame that forms the bulk of plaintiffs' claims.  Second, the report notes that BHCS had "several efforts underway that will improve scheduling and timeliness of health services delivery," *id*. at 18, including the appointment of a Health Care Improvement Team, development of a new management structure, updating the electronic medical record system, review of the Department's medical staffing plan, and creation of a quality assurance administrative position.  *See id*. at 18-19.  Regardless of the extent to which these endeavors succeeded, they do not show deliberate indifference to the inadequacies of the prison medical care system, but rather an attempt to address those inadequacies.  In short, plaintiffs have failed to present the type of comprehensive evidence of systemic deficiencies sufficient to create a genuine issue of material fact with respect to whether these defendants were deliberately indifferent to their serious medical needs.

Beyond this, defendants are entitled to summary judgment because none of the remaining plaintiffs can demonstrate that the alleged systemic deficiencies caused them injury.

*Plaintiff Lake:* Plaintiff Lake, who had previously had a kidney, several ribs, and malignant lymph nodes removed, claims that "MDOC officials abruptly stopped his blood tests and x-rays used to detect whether his cancer had returned, causing him great anxiety."  Pl.'s Br., at 19 (citing *id*., Ex. A, Pl. Lake's Resp. to Interrogatory No. 2).  Plaintiff Lake does not allege, however, that his cancer returned, or that he suffered any worsening of his medical condition as a result of the discontinuation of these screenings.  As the Sixth Circuit has explained, where "an inmate . . . complains that [a] delay in medical treatment rose to a constitutional violation," the plaintiff "must place verifying

18

medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).  Here, plaintiff Lake makes no allegations that could plausibly establish that he suffered any detrimental effect from the discontinuation of his cancer screenings.  He does not allege that he suffered any additional pain as a result of the delay, that his condition worsened as a result of the delay in treatment, or that his cancer has returned.  He alleges only that the discontinuation caused some fear and anxiety, but this is insufficient to establish and Eighth Amendment claim.  *See Solan v. Rice*, No. 3:09CV643, 2011 WL 2982190, at *4, *5 (E.D. Va. July 22, 2011) (anxiety caused by delay in providing blood test to inmate with history of thyroid cancer insufficient to state Eighth Amendment claim).  Pursuant to 42 U.S.C. § 1997e, however, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The possibility that future harm might befall plaintiff is neither itself a compensable injury, nor does it constitute "physical injury" for purposes of § 1997e(e).  *See Leon v. Johnson*, 96 F. Supp. 2d 244, 248-49 (W.D.N.Y. 2000); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind.), *aff'd*, 133 F.3d 459, 461 (7th Cir. 1997). *See generally*, *Mason v. Schriro*, 45 F. Supp. 2d 709, 716 (W.D. Mo. 1999) (discussing cases and concluding that § 1997e(e) "is most frequently applied where the plaintiff alleges that defendant's actions have caused him to fear physical injury . . . but he fails to show any physical injury.").[5]

---

[5]Plaintiff Lake argues that his prior cancer constitutes a physical injury under § 1997e(e), but that physical injury does not arise from the allegedly unconstitutional conduct upon which his claims are based.  That is, he does not allege that he suffered a physical injury as a result of the discontinuation of the cancer screenings.  *See Smith v. Cain*, No. 09-0322, 2012 WL 4051855, at *9, n.4 (Aug. 22, 2012) (emphasis added) ("[I]n the absence of any allegation that the plaintiff suffered any physical injury *as a result of defendants' alleged wrongful conduct in connection with the underlying claims*, he is precluded from

Finally, plaintiff Lake has established no causal connection between the alleged systemic deficiencies at STF and the discontinuation of his cancer screenings, as necessary to hold these defendants liable for deliberate indifference.  Plaintiffs' amended complaint does not allege, nor have plaintiffs presented any evidence to show, that the discontinuation of plaintiff Lake's cancer screenings resulted from the alleged inadequate staffing at STF, rather than as a result of an individualized treatment decision by plaintiff Lake's medical providers.  Indeed, plaintiff Lake's own interrogatory response indicates that he was given specific reasons for the cancellations of his tests, not that he was completely unable to obtain health services due to deficiencies in staffing.  *See* Pl.s' Br., Ex. A, Resp. to Interrogatory No. 2.  Because plaintiffs have failed to present any evidence of a causal connection between the alleged systemic deficiencies and plaintiff Lake's injury, defendants are entitled to summary judgment.

*Plaintiff Hoffman:* Plaintiff Hoffman alleges that at times he had to wait weeks to have his diabetes medication refilled, that he was denied the opportunity to regularly check his blood sugar levels, and at one point his prescribed medication was removed from the formulary.  With respect to the testing of his blood sugar levels, plaintiff does not allege that he suffered any physical harm, only that the failure to allow him to test his blood put him at a risk of harm.  As explained above, however, a fear or risk of harm is insufficient to state an Eighth Amendment claim.  With respect to the delay in receiving medication, plaintiff Hoffman avers that "on numerous occasions []his medication has run out . . . and [he] had to wait weeks for them to be refilled or renewed."  Pl.s' Br.,

---

recovering any compensatory damages by virtue of 42 U.S.C. § 1997e(e)."), *magistrate judge's report adopted*, 2012 WL 4051947 (M.D. La. Sept. 13, 2012); *Petty v. Goord*, No. 00 Civ. 803, 2002 WL 31458240, at *9 n.5 (S.D.N.Y. Nov. 4, 2002) (prisoner's earlier infection with HIV virus insufficient to constitute physical injury with respect to claims alleging plaintiff suffered retaliation and harassment as a result of breaches of confidentiality relating to his HIV status, where plaintiff "has drawn no connection between the 'prior physical injury' and defendants' alleged unlawful acts.").

Ex. D, ¶ 8.  He does not, however, allege any harm suffered as a result of the delay in receiving these medications.  He does allege a harm in connection with the discontinuation of his Glucophage, but this was a medical decision to discontinue this medication; he does not provide any evidence tying this decision to the systemic problems at the jail for which these defendants are responsible.  Further, plaintiff Hoffman claims that he suffered adverse reactions when he was removed from Avandia and placed on another medication, and that the nurse to whom he complained "failed to follow policy in the event of an emergent medical condition" and "rendered a medical decision absent authority that a doctor was required to make and arbitrarily refused Plaintiff medical treatment," *see id.*, Ex. J., ¶¶ 4-5, but these allegations relate to particularized treatment decisions with which plaintiff disagrees.  Regardless of whether the particular medical officials involved in these decisions were deliberately indifferent to plaintiff Hoffman's serious medical needs, there is no evidence of a causal connection between these individualized decisions and the alleged systemic deficiencies in the medical care system for which the defendants in this action may be held liable.

Plaintiff Hoffman also avers that he had to wait over a year to be seen by a dentist to repair a loose dental filling.  *See id.*, Ex. D, ¶ 18.  This averment, without more, is insufficient to establish deliberate indifferent to a serious medical need.  To be sure, a number of courts have found that a delay in providing dentures or other dental care may implicate a serious medical need; in each of those cases, however, the prisoner alleged that the delay in or denial of treatment caused other severe symptoms, such as headaches, disfigurement, bleeding, severe pain, and loss of weight.  *See Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989).  Plaintiff Hoffman has made no similar allegations here.  Because plaintiff Hoffman has not shown that the alleged delay in treating

his dental condition resulted in any severe symptoms, he cannot establish that he was denied treatment for a serious medical need. *See McCauley v. Johnson*, No. 7:07cv00244, 2007 WL 3146450, at *3 n.4 (W.D. Va. Oct. 25, 2007). Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff Hoffman's claims.

*Plaintiff Boone:* Plaintiff Boone avers that he suffered from a hip condition which caused severe pain and discomfort. He avers that medical providers at STF removed his Celebrex prescription, even though it had been approved by the Pain Clinic, and provided him with other prescriptions which were either ineffective or caused side effects. The medical providers also refused to approve him for treatment by a specialist, and prison officials failed to follow a medical accommodation for a special mattress. *See* Pl.s' Br., Ex. F. As with the other plaintiffs' claims, however, these claims do not arise from the alleged systemic deficiencies in the STF medical system. Plaintiff Boone does not contend that he was unable to obtain care; on the contrary, his own affidavit shows that he was repeatedly seen by medical personnel. Rather, he contends that particular treatment decisions such as the change in his medication or refusal to approve a specialist, or particular omissions by prison guards such as a failure to provide a special mattress, amounted to deliberate indifference. These particularized decisions, however, are not causally related to the alleged systemic deficiencies upon which plaintiffs' claims against these defendants are based. Accordingly, defendants are entitled to summary judgment with respect to these claims.

*Plaintiff Evans:* Plaintiff Evans complains that in May 2006 he experienced severe stomach pains, and requested testing and medication. He contends that he was never examined or treated. Again, however, plaintiffs have failed to present any evidence tying this single instance of a failure to treat to any systemic deficiencies at STF. As explained above, in the absence of any evidence

22

showing a causal connection between the systemic deficiencies and plaintiff Evans's injuries, defendants are entitled to summary judgment.

It may very well be the case that each of these plaintiffs received inadequate medical care. It may even be the case that the medical providers treating these plaintiffs were deliberately indifferent to their medical needs. Plaintiffs, however, chose to proceed not against these providers, but against supervisory officials on a theory that the medical care at STF was systemically unconstitutional. For the reasons explained above, plaintiffs have failed to establish a genuine issue of material fact with respect to whether the medical care at STF was so systemically deficient that the failure of these defendants to correct the deficiencies amounted to deliberate indifference to their serious medical needs, or with respect to whether there was a causal connection between the systemic deficiencies and their alleged injuries. In the absence of a genuine issue of material fact on these issues, defendants are entitled to summary judgment.

D.      *Conclusion*

In view of the foregoing, the Court should conclude that plaintiffs Taylor and Kanipe have failed to prosecute their action, and that defendants are entitled to dismissal of these plaintiffs' claims pursuant to Rule 41(b). With respect to the remaining plaintiffs, the Court should conclude that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law. Accordingly, the Court should grant defendants' motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal.

23

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 5, 2014                           s/Paul J. Komives_____
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 5, 2014, electronically and/or by U.S. Mail.

                                                s/Michael Williams_____
                                                Case Manager to the
                                                Honorable Paul J. Komives

24